## Norfolk

STANLEY JUSTIN BERKELEY

v.

COMMONWEALTH OF VIRGINIA

No. 1680-92-1

Decided November 29, 1994

COUNSEL

Stanley E. Sacks (Sacks, Sacks & Imprevento, on brief), for appellant.

Donald R. Curry, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Stanley Justin Berkeley (appellant) appeals from a judgment of the Circuit Court of the City of Chesapeake (trial court) that approved a jury verdict convicting him of first degree murder. The same jury convicted appellant of rape and abduction with intent to defile.

██ This appeal is limited to the first degree murder conviction for violation of Code § 18.2-32.[1] The dispositive question for our determination is whether the evidence is sufficient to sustain the first degree felony-murder conviction as charged in the final amended indictment. Upon familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). For the reasons that follow, we affirm the conviction.

---

[1] Code § 18.2-32, in effect at the time of these proceedings, provided as follows: Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

All murder other than capital murder and murder in the first degree is murder of the second degree and is punishable as a Class 3 felony.

On July 9, 1991, at approximately 6:20 a.m., Melissa Harrington (victim) was abducted by appellant and Andrew J. Chabrol (Chabrol) from the parking lot of the Virginia Beach apartment complex where she resided. Appellant told a deputy sheriff that he drove the car in which victim was forcibly taken to Chabrol's house in Chesapeake, where appellant raped her.

Chabrol had been victim's superior in the Navy office at which they worked. Upon information received by persons who resided in victim's Virginia Beach apartment complex, that same morning the police went to Chabrol's house. Upon being admitted, the police saw appellant seated in the den and observed that Chabrol had fresh lacerations on his chin and a bandage on his knuckles.

Appellant and Chabrol were separately questioned by the police. They gave conflicting statements as to their activities on the night before and the morning of the abduction. Initially, appellant told the police that he and Chabrol had gone to bed prior to midnight on the night before and that neither had left the house on the morning of July 9. Chabrol told the police that they had "stayed up all night playing computer games" and had left the house that morning at 7:00 a.m. to purchase beer. When confronted with Chabrol's statement, appellant changed his story to conform with Chabrol's account, except he claimed that he purchased only juice and Chabrol did not purchase anything. When appellant was told by the police that they were there only "to find Melissa Harrington," appellant denied having seen "any girls in the house."

The police request for permission to search Chabrol's residence was refused. A search warrant was then obtained. On that same day at approximately 2:30 p.m., the police found victim's nude, dead body on the floor of the master bedroom. Her body had been wrapped in a blanket, her face taped from her eyebrows to her chin, her head covered by a plastic bag and a rope ligature was tied around her neck.[2] In the kitchen, the police found two garbage bags, one containing various items belonging to victim, the

---

[2] Victim also suffered multiple hemorrhages in the muscles of her neck and throat. Due to the strangulation, there were "conjunctival" hemorrhages in the victim's eyes and abrasions on her neck consistent with "fingernail marks." There were abrasions on her wrists and ankles, consistent with being bound; a small laceration on her finger; contusions on the inner surfaces of her lips; small abrasions on her abdomen, right arm and left calf; and electrical burns on her upper left thigh. The ligature around her neck had been tied so

other containing bed linens and a blanket. The bed in the master bedroom had been made with "fresh linens."

Vaginal swabs taken from victim were analyzed and revealed the presence of seminal fluid and spermatozoa. DNA testing of the sperm was consistent with the DNA of appellant and inconsistent with Chabrol and victim's husband. The likelihood of any black male other than appellant being the source of the sperm was .018 percent, or approximately one in 5,000. If white males were included in the computation, the likelihood that the sperm came from anyone, other than appellant, decreased to .0058 percent, or approximately one in 17,000.

The cause of victim's death was "complex asphyxia due to suffocation and strangulation, both ligature and manual."

Upon discovery of victim's body, both Chabrol and appellant were arrested. At 3:45 a.m. on July 10, 1991, at the local jail, appellant made inculpatory statements to Chesapeake Deputy Kevin Knight (Knight). Knight testified that appellant stated that he "was a victim of circumstances," that,

He stated was only here on vacation. He stated during the abduction he could only drive the car in which they picked her up due to his limited ability. He said he f——— her but on the second time he could not bring himself to do it.

Appellant presented no evidence on his behalf.[3]

Appellant was indicted and charged by the grand jury with having violated Code § 18.2-31 (capital murder). Upon a motion of the Commonwealth, prior to the trial, that indictment was amended by deleting Code § 18.2-31 and substituting Code § 18.2-32 as the offense alleged to have been committed. Also deleted was the allegation in the original indictment that the killing occurred "during the commission of, or subsequent to, rape."

■ After the Commonwealth rested its case, and during appellant's argument in support of his motion to strike, the Common-

---

tightly that it left a "furrow" when removed. There was also a superficial laceration on the back of victim's head.

[3] In a separate trial, Chabrol pleaded guilty to the capital murder of victim and was sentenced to death. *See Chabrol v. Commonwealth*, 245 Va. 327, 427 S.E.2d 374 (1993).

wealth further moved the trial court to permit the indictment to be amended again by adding the phrase "in the commission of rape or abduction." When the Commonwealth agreed that it would "give up any claim . . . to concert of action," appellant consented to the amendment without objection and the trial court approved. We have defined "concert of action" as an "action that has been planned, arranged, adjusted, agreed on and settled between the parties acting together pursuant to some design or scheme." *Rollston v. Commonwealth*, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991) (quoting *Black's Law Dictionary* 262 (5th ed. 1979)). All participants in such planned enterprises may be held accountable for incidental crimes committed by another participant during the enterprise even though not originally or specifically designed. *Id.*; *see also Brown v. Commonwealth*, 130 Va. 733, 738, 107 S.E.2d 809, 811 (1921).

The amended indictment provided:

The Grand Jury charges that:
On or about July 9, 1991, in the City of Chesapeake Virginia, the accused, STANLEY JUSTIN BERKELEY, did maliciously kill and murder Melissa Harrington, in the commission of rape or abduction, in violation of Section 18.2-32 of the Virginia Code.

Following the trial court's approval of the amended indictment, appellant contended that the evidence failed to show either who killed victim or that appellant was in any way connected to the killing. He further argued that, because the Commonwealth had agreed not to contend that the murder occurred by "concert of action," the record must contain evidence that appellant was either the perpetrator,[4] a principal in the second degree,[5] or an accessory before the fact.[6]

---

[4] To learn who killed victim, we would have to consult the record in *Chabrol, supra* note 3, published after appellant's trial.

[5] Although "[a] principal in the second degree is equally accountable and is subject to the same punishment as the actual perpetrator," *Ramsey v. Commonwealth*, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986), no evidence established that appellant was present at the time of the killing, aiding and abetting in the commission of the crime, requirements necessary to support a principal in the second degree conviction. *Id.*

[6] The record fails to show directly that appellant shared the criminal intent of the killer or that appellant intended to incite or aid in the commission of the crime, require-

Although no evidence identified the actual perpetrator, direct, uncontradicted evidence in the record established that at 6:20 a.m., on July 9, 1991, appellant abducted victim and drove her to Chabrol's house in Chesapeake. No evidence was presented that appellant or victim left that house before the police found her nude, dead body in the master bedroom of that same house. Direct evidence established that, between 6:20 a.m. and approximately 9:30 a.m. on that same day, appellant raped victim. Although no direct evidence proved that appellant strangled victim or that he applied the Taser unit, taped her breathing facilities, or tied the ligature around her neck, sufficient circumstantial evidence was presented from which the fact finder could reasonably infer that the killing occurred within the *res gestae* of the abduction.

No reasonable hypothesis contained in this record supports even a remote possibility of appellant's innocence.

"Whether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt."

*Cantrell v. Commonwealth*, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (quoting *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526-27, 351 S.E.2d 598, 600 (1986)). Here, every reasonable hypothesis of innocence has been excluded. The abduction, rape, and murder all concurred to form an unbroken chain that links appellant to those crimes beyond a reasonable doubt. *See Bishop v. Commonwealth*, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984); *Boothe v. Commonwealth*, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987).

We need only to decide whether the felony-murder elements were proved beyond a reasonable doubt:

The rule which we adopt, therefore, consistent with the weight of authority elsewhere, is that the felony-murder statute applies where the killing is so closely related to the felony

---

ments to support his conviction as an accessory before the fact. *Cirios v. Commonwealth*, 7 Va. App. 292, 298, 373 S.E.2d 164, 167 (1988).

in time, place, and causal connection as to make it a part of the same criminal enterprise.

*Haskell v. Commonwealth*, 218 Va. 1033, 1043-44, 243 S.E.2d 477, 483 (1978). In *Haskell*, four defendants unsuccessfully attempted to rob William M. Kantor (Kantor). When nothing of value was found on Kantor, the robbers attempted to abandon the criminal venture and leave the scene. Having been assaulted and battered by one of the robbers, Kantor attempted to foil their escape and was shot and killed by one of the participants in the attempted robbery. Haskell was not the killer. Haskell unsuccessfully argued that the felony-murder doctrine could not be applied because the venture had been concluded and the robbers were attempting to leave the crime scene. He contended that the killing did not occur during the commission of a felony. The Court rejected that argument and found that the killing was so closely related to the felony in "time, place and causal connection" as to make it a part of the same criminal enterprise, and within the *res gestae* so as to support the felony-murder charge. *Id.*

In *King v. Commonwealth*, 6 Va. App. 351, 356, 368 S.E.2d 704, 706 (1988), we noted that the *Haskell* Court did not elaborate upon the degree of causal connection required to support a felony-murder conviction. Based upon the purpose intended by the legislature when it adopted the felony-murder doctrine by statute, we hold that any degree of causation is sufficient.

The [felony-murder] doctrine was developed to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing. . . . The justification for imputing malice was the theory that the increased risk of death or serious harm occasioned by the commission of a felony demonstrated the felon's lack of concern for human life. The purpose of the doctrine was to deter inherently dangerous felonies by holding the felons responsible for the consequences of the felony, whether intended or not. While the range of felonies which may be a predicate for the felony-murder conviction has changed, the function of the doctrine is still to elevate to murder a homicide resulting from a felony by imputing malice.

*Spain v. Commonwealth*, 7 Va. App. 385, 393-94, 373 S.E.2d 728, 732-33 (1988) (citation omitted).

■ Evidence in this record establishes appellant's guilt of both the rape and the abduction beyond a reasonable doubt. Abduction is a continuing offense. *See Brown v. Commonwealth*, 230 Va. 310, 313, 337 S.E.2d 711, 713 (1985). Sufficient evidence exists from which the fact finder could reasonably infer that the abduction continued to the time of victim's death.

> [W]hen the homicide is within the *res gestae* of the initial felony and is an emanation thereof, it is committed in the perpetration of that felony. Thus, the felony-murder statute applies where the initial felony and the homicide were parts of one continuous transaction, and were closely related in point of time, place, and causal connection.

*Haskell*, 218 Va. at 1041, 243 S.E.2d at 482; *see also Talbert v. Commonwealth*, 17 Va. App. 239, 245, 436 S.E.2d 286, 289-90 (1993). The continuation of events "covered by the term *res gestae* depends upon the circumstances of each particular case." *Cluverius v. Commonwealth*, 81 Va. 787, 805 (1886) (citation omitted). *Res gestae*, a principle generally associated with an exception to the hearsay evidence rule, pertains not only to what is said but to what is done as well. *See Ward v. White*, 86 Va. 212, 217, 9 S.E. 1021, 1022-23 (1889); *Williams v. Commonwealth*, 85 Va. 607, 613, 8 S.E. 470, 473 (1889). The *res gestae* of the underlying crime begins where an indictable attempt to commit the felony is reached, *see Bizup v. People*, 371 P.2d 786, 788 (Colo.), *cert. denied*, 371 U.S. 873 (1962), and ends where the chain of events between the attempted crime or completed felony is broken. *Payne v. State*, 406 P.2d 922, 924-25 (Nev. 1965); *see also* 40 Am. Jur. 2d *Homicide* § 73 (1994).

Here, appellant began his criminal venture by abducting victim and enlarged that venture by raping her. This record contains evidence from which the fact finder could reasonably infer that the abduction continued until victim's death, and thus, the homicide occurred as a part of the *res gestae* of the criminal venture.

> It has been justly said that the affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to

some preceding circumstance, and in its turn becomes the prolific parent of others; and each during its existence, has its inseparable attributes and its kindred facts materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances constituting a part of the *res gestae* may always be shown to the jury in connection with the principal fact.

*Davis v. Franke*, 74 Va. (33 Gratt.) 413, 420 (1880).

We hold that victim's murder stemmed from the commission of the felony of abduction, was a part of one continuous transaction, closely related in point of time, place and causal connection, and occurred within the *res gestae* of the initial felony. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Bray, J., concurred.

Benton, J., dissenting.

Although the majority recognized that the Commonwealth's Attorney agreed at trial of this case that the Commonwealth would "give up any claim . . . to concert of action," the majority holds that the Commonwealth was not precluded from prosecuting Stanley Justin Berkeley for felony-murder under Code § 18.2-32. I disagree with the majority's holding.

Because of its stipulation, the Commonwealth was required to prove that Berkeley actually committed the murder, i.e., was the principal in the first degree. *See Johnson v. Commonwealth*, 220 Va. 146, 150, 255 S.E.2d 525, 527 (1979) ("only the person who is the immediate perpetrator may be a principal in the first degree"). The principle underlying a felon's liability as a principal in the second degree under the felony-murder doctrine is based upon a concert of action theory. Because the record is devoid of proof beyond a reasonable doubt that Berkeley killed the victim, I would hold that the Commonwealth failed to prove the stipulated theory upon which it prosecuted Berkeley, and I would reverse his conviction.

The grand jury returned a capital murder indictment charging that Berkeley "willfully, deliberately and with premeditation

kill[ed] and murder[ed] Melissa Harrington during the commission of, or subsequent to, rape in violation of [Code ]§ 18.2-31." At the conclusion of the Commonwealth's evidence at trial, the indictment was amended to read that Berkeley "maliciously kill[ed] and murder[ed] Melissa Harrington in the commission of rape or abduction." In amending the indictment to charge felony-murder, the Commonwealth's Attorney stipulated that he would not assert that there was "concert of action" between Berkeley and Andrew Chabrol, the co-defendant.

The jury was not instructed that it could find Berkeley guilty of murder if the victim died during the occurrence of the abduction. Nothing in the record explains that omission. The jury was instructed that it could find Berkeley guilty of murder only if the victim died during the occurrence of the rape. No evidence proved, however, that Berkeley was the person who actually killed the victim. Indeed, Andrew Chabrol pleaded guilty to capital murder of the victim. *See Chabrol v. Commonwealth*, 245 Va. 327, 427 S.E.2d 374 (1993).

A defendant may be "a principal in the second degree [to a felony-murder] and, as such, criminally responsible for the consequences of his conduct 'as if a principal in the first degree.' " *Heacock v. Commonwealth*, 228 Va. 397, 403, 323 S.E.2d 90, 94 (1984). A person's culpability as a principal in the second degree arises from the concept that "[d]ue to the concert of action, [the principal in the second degree] is deemed to have shared [the principal in the first degree's] intent." *Riddick v. Commonwealth*, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983). At best, the evidence proved only that Berkeley was a principal in the second degree to the act of felony-murder perpetrated by Chabrol.

On this appeal, the Commonwealth argued in its brief that "[concert of action] has nothing to do with felony-murder." The Commonwealth also argued that "under the felony-murder theory, . . . [proof of] 'concert of action' and 'shared intent' [is] not required." The Commonwealth further asserted that concert of action is only relevant if the Commonwealth had been attempting to convict Berkeley of murder as a principal in the second degree. Thus, the Commonwealth asserts that "[t]his appeal, then, reduces itself to the self-answering question of whether the evidence was sufficient to prove that the homicide was within the *res gestae* of the predicate felonies that Berkeley clearly committed."

This argument ignores the absence of proof that Berkeley acted as a principal in the first degree to the murder. The Supreme Court of Virginia has rejected the "proximate cause theory of liability" as the basis for criminal responsibility in felony murder cases. *See Wooden v. Commonwealth,* 222 Va. 758, 763-65, 284 S.E.2d 811, 814-16 (1981). As it argued unsuccessfully in *Wooden,* the Commonwealth again argues in this Court a theory that would premise an aider and abettor's liability in a felony-murder case upon proximate cause.

The majority opinion apparently adopts the Commonwealth's arguments but also goes further and "hold[s] that *any* degree of causation is sufficient." (emphasis added). That holding is in direct conflict with *Wooden. See* 222 Va. at 763-65, 284 S.E.2d at 814-16. Moreover, the majority invokes Berkeley's participation in the *abduction* as a sufficient degree of causation to uphold this conviction. The record reflects, however, that the jury was instructed on felony-murder as follows:

The Court instructs the jury that the defendant is charged with the crime of first degree murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That Melissa Harrington was killed;

(2) That the killing was malicious; and

(3) That the killing occurred in the commission of rape in which the defendant participated.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty . . . .

Thus, even though the jury was not instructed that abduction could be the predicate offense that would support a conviction of felony-murder, the majority finds that the "record contains evidence from which the fact finder could reasonably infer that the abduction continued until victim's death, and thus, the homicide occurred as a part of the *res gestae* of the criminal venture." This reasoning improperly premises Berkeley's criminal liability upon a

theory that was not submitted to the jury. *Dunn v. United States*, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was [not] . . . presented to a jury at trial offends the most basic notions of due process"). "It is as much a violation of due process to send an accused to prison following a conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

Felony-murder is codified in Virginia under Code § 18.2-32 and retains the common law elements of murder.[7] In *Wooden*, the Virginia Supreme Court defined felony-murder as follows:

> Where a person maliciously engages in criminal activity, such as robbery, and homicide of the victim results, the malice inherent in the robbery provides the malice prerequisite to a finding that the homicide was murder. And, all of the criminal participants in the initial felony may be found guilty of the felony-murder of the victim so long as the homicide was within the *res gestae* of the initial felony.

222 Va. at 762, 284 S.E.2d at 814.

Felony-murder was initially developed as a means to elevate a homicide committed during the course of a felony to murder. *King v. Commonwealth*, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988). Murder is distinguished from other killings by the presence of malice aforethought. In order to find a felon guilty for a murder committed during a felony, it is necessary that this *mens rea* is present by the person who actually causes the death. *See Wooden*, 222 Va. at 765, 284 S.E.2d at 816. Malice is imputed to the felon who causes a death from his intent to commit the felony. *Id.* at 762, 284 S.E.2d at 814. If the felon charged with felony-murder is not the actual perpetrator of the homicide, malice is imputed from the perpetrator of the killing to the co-felon charged with felony-murder. *See id.*; *Commonwealth ex rel. Smith v. Myers*, 261 A.2d 550, 553-55 (Pa. 1970).

---

[7] Felony-murder is also codified under Code § 18.2-33 as the killing of one accidently while in the prosecution of some felonious act other than those specified in Code §§ 18.2-31 and 18.2-32.

There are several different theories of felony-murder liability which state courts have adopted. *See* John S. Anooshian, Note, *Should Courts Use Principles of Justification and Excuse to Impose Felony-Murder Liability?* 19 Rutgers L.J. 451, 459-62 (1988). The majority viewpoint, which Virginia follows, is an agency theory. Under that theory, liability lies "only where the act of killing is 'either actually or constructively committed' by a felon 'or by someone acting in concert with him or in furtherance of a common design or purpose.' " Anooshian, at 461-62 (citation omitted); *Wooden*, 222 Va. at 763-65, 284 S.E.2d at 815. *See also Commonwealth v. Redline*, 137 A.2d 472, 478-79 (Pa. 1958).

The facts of *Wooden* illustrate this idea. Wooden and three other persons joined to commit a robbery. Wooden's co-felon shot the victim of the robbery. Before the victim died, the victim shot and killed Wooden's co-felon. Wooden was convicted of two felony-murders. She appealed from the conviction of felony-murder that grew out of the death of her co-felon. 222 Va. at 760, 284 S.E.2d at 812-13. Citing Pennsylvania's long history of case decisions on the felony-murder doctrine and relying upon the principles developed in those decisions, the Supreme Court of Virginia reversed Wooden's conviction and held that a criminal participant in a felony cannot be convicted of felony-murder when a co-felon is killed by the victim of the initial felony. *Id.* at 765, 284 S.E.2d at 816. The Court reasoned that because no evidence proved that the victim killed the co-felon with malice, malice cannot be imputed to Wooden under the felony-murder rule.[8] *Id.* at 762, 284 S.E.2d at 814.

For felony-murder prosecutions in states, such as Virginia, that follow the agency theory, liability turns upon the intent of the perpetrator of the killing. To uphold a conviction, "the killing must have been done by the defendant or an accomplice or confederate

---

[8] The Court cited both *Commonwealth v. Redline*, 137 A.2d 472 (Pa. 1958), and *Commonwealth ex rel. Smith v. Myers*, 261 A.2d 550 (Pa. 1970), in its holding that a participant in a felony may not be convicted of the felony-murder of a co-felon killed by the victim of the initial felony. The rationale employed in each case is different. *Redline's* holding is based on a justifiable homicide theory. In *Redline*, a police officer shot and killed a robber. The court held that a felon cannot be liable for the murder of the lawful conduct of another, since it was justifiable homicide. *Id.* at 483. Thus, liability depended upon state of mind of the victim. *Myers*, the more recent of the two cases, reaffirmed an old concept based upon an agency theory—liability will only lie when the killing is done by one acting in furtherance of the felony. *Id.* at 555, 559-60.

or one acting in furtherance of the felonious undertaking." *Haskell v. Commonwealth*, 218 Va. 1033, 1042, 243 S.E.2d 477, 482 (1978) (citing *Commonwealth ex rel. Smith v. Myers*, 261 A.2d 550, 555 (Pa. 1970)). As a result, a felon can only be guilty of felony-murder in Virginia if a death results from the felon's own act or from the act of a person *acting in concert* with the felon in connection with the underlying felony.

A contrary theory, which Virginia has rejected, is the view that a felon is guilty of any homicide resulting from the commission of a felony whenever the evidence proves that the felony is the proximate cause of the homicide. *See Wooden*, 222 Va. at 764, 284 S.E.2d at 815. In other words, in Virginia a felon may not be convicted of felony-murder if the actual killing was committed by the police or the victim or by some other person not acting in concert with the felons. *Id.*

In disregarding the principle that a principal in the second degree's liability for felony-murder is based upon concert of action, the majority resurrects the proximate cause rationale. The majority believes that it is unnecessary to prove concert of action for a felony-murder conviction to stand. The majority's disregard of Berkeley's argument that concert of action is inherent in applying the doctrine of felony-murder to a principal in the second degree manifests an erroneous view that malice imputed to the felon charged with felony-murder need not flow through the killer but rather arises solely through the principle of proximate cause. In that way, a felon may always be guilty of the felony-murder of a killing done by anyone, as long as proximate cause is found. *Wooden* has addressed and rejected that theory.

The issue squarely presented in this case is whether concert of action is subsumed within the felony-murder doctrine when an aider and abetter is prosecuted. In Virginia, the standard jury instruction defining concert of action is as follows:

> If there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

*Rollston v. Commonwealth*, 11 Va. App. 535, 543, 399 S.E.2d 823, 827 (1991).

Our cases also hold that transferred intent occurs "if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional." *Riddick v. Commonwealth*, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983). Thus, if two people act in concert in the commission of a felony, and one felon shoots a person, that felon's intent is transferred and shared with the other felon as a principal in the second degree. *Id.* *See also Epps v. Commonwealth*, 216 Va. 150, 156, 216 S.E.2d 64, 69 (1975). It follows, therefore, that a co-felon who is not the actual killer may be charged with felony-murder as a principal in the second degree under a concert of action theory. Indeed, this Court has specifically upheld the giving of a concert of action instruction in a felony-murder trial where the defendant was not the actual killer. *See Rollston*, 11 Va. App. at 543, 399 S.E.2d at 828. *See also People v. Brown*, 328 N.W.2d 380, 383 (Mich. Ct. App. 1982) (where there is evidence of concert of action, an aiding and abetting jury instruction is proper in a felony-murder case).

Code § 18.2-18 is explicit in stating that "[i]n the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree; . . . except in the case of a killing for hire." In *Heacock v. Commonwealth*, 228 Va. 397, 403-04, 323 S.E.2d 90, 94 (1984), the Supreme Court affirmed Heacock's conviction for felony-murder under Code § 18.2-33. The Court found immaterial Heacock's contention that the evidence failed to show that he administered the fatal injection. The Court ruled that Heacock was a principal in the second degree because he was aiding and abetting in the preparation of the narcotics and, as such, was equally as guilty as a principal in the first degree. *Id.* Relying upon *Heacock*, this Court in *Hickman v. Commonwealth*, 11 Va. App. 369, 373, 398 S.E.2d 698, 700 (1990), *aff'd*, 242 Va. 263, 410 S.E.2d 88 (1991), held that the defendant's participation as a principal in the second degree in the decedent's ingestion of cocaine was sufficient to support his conviction under the felony-murder doctrine. *See also Rollston*, 11 Va. App. at 548, 399 S.E.2d at 830-31.

Because Virginia's law on felony-murder liability for a felon who was not the actual killer is based upon a concert of action theory, I believe the Commonwealth was barred from convicting Berkeley under Code § 18.2-32 after it agreed to forego proceeding under a concert of action theory. Due process encompasses "a fundamental sixth amendment concern that guilt be initially adjudicated before a jury based on the government's case as presented at trial." *Cola v. Reardon*, 787 F.2d 681, 697 (1st Cir.), *cert. denied*, 479 U.S. 930 (1986). Thus, I dissent from the majority's holding.