COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons* and Frank
Argued at Chesapeake, Virginia


CHRISTOPHER JAMES MOLTZ

                                    MEMORANDUM OPINION** BY
v.    Record No. 0930-99-1          JUDGE DONALD W. LEMONS
                                         MAY 2, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                     Wilford Taylor, Jr., Judge

            Charles E. Haden for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Christopher J. Moltz appeals his conviction for murder,

robbery and conspiracy to commit robbery.  On appeal, he

contends that the trial court erred (1) by admitting the

statement of Adam Davis as a declaration against penal interest,

(2) by denying Moltz's motion for a mistrial, (3) by denying

Moltz's motion to strike, and (4) by denying Moltz's motion to

set aside the verdict.  Finding no reversible error, we affirm.

_____

     * Justice Lemons prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the
Supreme Court of Virginia.

     ** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

On the evening of December 17, 1997, three men wearing black clothes and masks entered a house occupied by James Kahley, Aaron Melton, James Ritchie and Michael Jackson.  The first man put a gun to Kahley's head and demanded money and jewelry.  Kahley gave him twenty dollars.  The second man carried a chrome gun with a laser site and immediately shot and killed the occupants' six-month-old Rottweiler.  The third man went upstairs where he confronted Melton and Jackson and demanded money from Jackson.  He shot Jackson in the head after Jackson told the man that he had no money.  Melton wrestled the assailant to the ground and, in the course of the struggle, managed to remove part of his mask, exposing his face.  The men left after "three to four minutes."  An autopsy revealed that Jackson died from a gunshot wound to the head.

On December 21, 1997, police questioned Adam Davis ("Adam") about the murder.  Adam told police that he and Moltz had been "having problems with [Kahley and his roommates]," that Moltz said he could get someone to rob them and that he and Moltz asked Frankie Davis, Adam's brother, if he knew someone who would be interested in participating in a robbery.  Adam stated that Moltz had a map drawn in pencil and used it to explain the layout of the victims' house to Montusa Pace, Otis Thomas and a man known as "Nique."

-

On December 22, 1997, police obtained a statement from Frankie implicating Moltz in the robbery. On January 8, 1998, police showed Melton a photo spread from which he identified Otis Thomas as the man who shot Jackson. Police recovered a "laser switch beam" from Frankie's yard and recovered a school bag from his mother's house that contained bullets. Moltz was tried before a jury on one count of first degree murder, one count of conspiracy to rob, three counts of robbery, one count of burglary and five counts of use of a firearm in the commission of a felony. He was tried jointly with Adam, Otis Thomas and Montusa Pace.

At trial, Frankie testified that on the afternoon of December 17, 1997, Moltz and Adam went to Frankie's home in Hampton and asked if he or anyone he knew wanted to participate in a robbery. Frankie stated that he telephoned Montusa Pace, told him what Moltz and Adam wanted and arranged a meeting. Pace arrived at the meeting dressed in a ski mask and a "hoody." Otis Thomas and a third male known as "Nique" accompanied Pace; all three men wore black clothes. Frankie testified that Adam and Moltz used a pencil-drawn map to explain the layout of the victims' house. Between 8:45 and 8:55 p.m. Moltz and Adam led Pace, Thomas and Nique to the victims' house.

According to Frankie's testimony, Adam returned around 11:30 p.m. and told Frankie that "[s]omething went wrong" because he had "seen police cars and ambulances everywhere."

-

The following morning Adam told Frankie, "Your boy shot somebody last night." Frankie testified that as Adam was leaving, Pace arrived with "a crazy look on his face" and said, "[the house was] nothing like [Adam and Moltz] said it was." Frankie told the jury that Pace said he shot a Rottweiler and that Thomas "had to [shoot] somebody." Frankie further testified that Pace gave him a bag containing a .38 caliber weapon and bullets.

Pace's attorney objected since the .38 caliber handgun was not evidence in this case.[1] The trial judge sustained the objection, gave a cautionary instruction to the jury directing them to ignore testimony concerning the .38 caliber handgun and stated, "[t]hat evidence is not before the Court, and it's not relevant in this case, and you're not to consider it." The Commonwealth's attorney again asked Frankie whether anything else was in the bag. Frankie told the jury that Pace gave him a coat, inside of which was a Tech .22 rifle. Pace's attorney made the same objection and moved for a mistrial based upon the jury hearing evidence that the court had already ruled inadmissible.[2] The court denied the motion for a mistrial and the following exchange occurred:

> THE COURT: Ladies and gentlemen, during the preliminary instructions, I gave you a guidance that you should not consider any

[1] The .38 caliber handgun had been ruled inadmissible on the first day of the three-day trial.

[2] For purposes of this appeal, Moltz has adopted the arguments and objections of Pace's trial counsel.

-

evidence that is stricken or that you are told to disregard as a result of my sustaining an objection.

Again, we have reference to a .22 caliber weapon – the bullet, I'm sorry. Yes, .22 caliber bullet. .22 caliber which I sustained an objection. You've heard that. You're not to consider it. You are to disregard that. That's not evidence in this case.

[DEFENSE COUNSEL]: I believe it was the rifle, Judge.

THE COURT: All right. .22 caliber rifle. You are not to consider that. It is not evidence in this case.

Frankie testified that Pace gave him "some bullets" in a bag and identified Commonwealth's Exhibit 16 as the "laser switch beam" that had been given to him by Pace which Frankie hid in his backyard. Pace told Frankie to hold onto the items because he did not want them in his house "in case something went on." Frankie testified that he "switched [the bullets] and put them in a book bag" which he "put behind some old equipment" in his "mom's backyard."

After finding Adam, Thomas and Pace guilty of a total of thirty-one counts, the jury resumed deliberations the following Monday morning on the charges against Moltz. In the course of those deliberations, the jury sent the following question to the judge: "What is the difference in legal terms [between] burglary and robbery?" The jury deliberated for six more hours

-

but was deadlocked.  The trial judge gave the jury an "Allen charge" instruction stating,

> As you have been told, your verdict must be unanimous.  If you can possibly reach a verdict, it is your duty to do so. You should listen to the views and opinions of your fellow jurors with fairness, and candor, and you should give consideration to what they say.
>
> However, you must decide the case for yourself, and you should reach an agreement only if it can be done without sacrificing your individual judgment.
>
> During the course of your deliberations, each of you, whether in the majority or the minority, should not hesitate to reexamine your own views and change your opinion if you are convinced it was wrong.
>
> No juror, however, should give up his or her honest opinion as to the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.  If you can reach a decision without surrendering your conscientious opinion, it is your duty to do so.

The jury convicted Moltz of murder, conspiracy to commit robbery and three counts of robbery.  Moltz's subsequent motion to set aside the jury's verdict was overruled.

## II.  ADMISSION OF STATEMENT

The Commonwealth concedes that the admission of Adam's statement to police was error.  Adam's statement to police may have satisfied Virginia evidentiary requirements for qualification as an exception to the hearsay rule, but

-

nonetheless fails to pass constitutional scrutiny.  As in Lilly v. Virginia, 527 U.S. 116, 125 (1999), "[w]e assume, as we must, that [Adam's] statements were against his penal interest as a matter of state law, but the question whether the statements fall within a firmly rooted hearsay exception for Confrontation Clause purposes is a question of federal law."  The Supreme Court of the United States has "consistently either stated or assumed that the mere fact that one accomplice's confession qualified as a statement against his penal interest did not justify its use as evidence against another person."  Id. at 128.  "[A]ccomplice's confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in [the Court's] Confrontation Clause jurisprudence."  Id. at 134.

> When a court can be confident- as in the
> context of hearsay falling within a firmly
> rooted exception--"that the declarant's
> truthfulness is so clear from the
> surrounding circumstances that the test of
> cross-examination would be of marginal
> utility," the Sixth Amendment's residual
> "trustworthiness" test allows the admission
> of the declarant's statements.

Id. at 136 (quoting Idaho v. Wright, 497 U.S. 805, 820 (1990)). Accordingly, the possibility of admitting an accomplice's statement under a "residual trustworthiness" test was left open. We do not consider the question of residual trustworthiness, however, since the Commonwealth does not argue that it applies

-

in this case.  Rather, the Commonwealth argues that the error in

admission of Adam's statement was harmless.

### III.  HARMLESS ERROR

The United States Supreme Court in Lilly remanded the case

to the Supreme Court of Virginia "to assess the effect of

erroneously admitted evidence in light of substantive state

criminal law."  Lilly, 527 U.S. at 139.  On remand, the Supreme

Court of Virginia recited the standard to be employed in such an

analysis.

> The standard that guides our analysis of the
> harmless error issue in this case is clear.
> Thus, "before a federal constitutional error
> can be held harmless, the court must be able
> to declare a belief that it was harmless
> beyond a reasonable doubt;" otherwise the
> conviction under review must be set aside.
> Chapman v. California, 386 U.S. 18, 24
> (1967).  This standard requires a
> determination of "whether there is a
> reasonable possibility that the evidence
> complained of might have contributed to the
> conviction."  Id. at 23.  In making that
> determination, the reviewing court is to
> consider a host of factors, including the
> importance of the tainted evidence in the
> prosecution's case, whether that evidence
> was cumulative, the presence or absence of
> evidence corroborating or contradicting the
> tainted evidence on material points, and the
> overall strength of the prosecution's case.
> Delaware v. Van Arsdall, 475 U.S. 673, 684
> (1986); see also Harrington v. California,
> 395 U.S. 250, 254 (1969); Schneble v.
> Florida, 405 U.S. 427, 432 (1972)
> (erroneously admitted evidence harmless
> where it was merely cumulative of other
> overwhelming evidence of guilt).

-

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999).

Here, Adam's statement was entirely cumulative of Frankie's statement which had already been received in evidence without objection from Moltz. Frankie's testimony established that: (1) Moltz and Adam came to Frankie's house looking for someone to rob the victims because "[Moltz and Adam] were beefin' with the guys over some girls"; (2) that Moltz had a map of the victims' house drawn out in pencil; (3) that Frankie contacted Pace, Thomas and Nique to commit the robbery; (4) that Adam had the map and showed it to Pace and Thomas; (5) that Moltz and Adam spoke with Pace, Thomas and Nique about the layout of the house and the robbery; (6) that Moltz and Adam drove to the victims' house and pointed it out to Pace and his cohorts; and (7) that Pace came over to Frankie's house the day after the murder and gave him a bag containing a laser site and bullets.

In comparison, Adam's oral and written confessions to the police established that: (1) he and Moltz had been in a dispute with the victims; (2) Moltz initiated the conversation about the robbery; (3) Moltz said that "he could have someone else [commit the robbery] for him"; (4) Moltz asked Frankie if he knew somebody who wanted to participate in a robbery; and (5) he and Moltz had a map drawn in pencil of the victims' house, and Moltz used it to explain the robbery to Pace.

-

Unlike Lilly where there was no independent corroboration of who was the "trigger man" and the accomplice testimony was clearly harmful on this crucial question, here, the admission of Adam's oral and written confessions provided no further evidence than that which had already been established by Frankie's testimony at trial. Although error, we hold that the admission of Adam's statement was harmless beyond a reasonable doubt.

### III. MOTION FOR MISTRIAL

"Whether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993); see Lewis v. Commonwealth, 211 Va. 80, 83, 175 S.E.2d 236, 238 (1970). "[W]hether a trial court should grant a mistrial is a matter resting within its discretion, and absent a showing of abuse of discretion, the court's ruling will not be disturbed on appeal." Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 607 (1990). The judgment "will not be reversed for the improper admission of evidence that a court subsequently directs a jury to disregard because juries are presumed to follow prompt, explicit, and curative instructions." Beavers, 245 Va. at 280, 427 S.E.2d at 420. Only if a manifest probability existed as a matter of law that the improper evidence prejudiced Moltz by remaining on the minds of the jury and influencing their verdict despite the instruction to disregard it, will the trial court's

-

decision be reversed.  See Bennett v. Commonwealth, 29 Va. App. 261, 273-74, 511 S.E.2d 439, 445 (1999).  "'Whether a manifest probability exists that . . . improper evidence prejudiced the accused despite [a court's] cautionary instruction depends upon the nature of the incompetent evidence when considered in relation to the nature of the charges, the other evidence in the case, and [the] manner in which the prejudicial evidence was presented.'"  Id. at 274, 511 S.E.2d at 445 (quoting Mills v. Commonwealth, 24 Va. App. 415, 420-21, 482 S.E.2d 860, 862-63 (1997)).  "Additionally, a court's failure to take any action in response to an improper question is relevant to determining prejudice because the jury may infer from such inaction that the court approved of the impropriety."  Bennett, 29 Va. App. at 274-75, 511 S.E.2d at 445.  "The number of references to an error is also relevant to our consideration of whether prejudice influenced the jury."  Id. at 275, 511 S.E.2d at 445.

At the beginning of the second day of a three-day trial, the Commonwealth's attorney, in an attempt to elicit Frankie's testimony with respect to specific items contained in the bag given to him by Pace without leading the witness, asked general questions about the contents of the bag.  In his responses, Frankie mentioned that the bag contained a Tech .22 rifle and a .38 caliber handgun.[3]  Frankie's testimony, however, did not link

_____

[3] Although the record indicates the jury may have seen one of the weapons the day before, it is inconclusive in that

-

the Tech .22 rifle or the .38 caliber handgun to the robbery and shooting.  Furthermore, defense counsel immediately objected, and the trial court immediately sustained each objection.  That testimony was not further developed or explored, leaving the jury to have heard of each weapon only once.  Having evaluated the effect of the testimony and considered its impact, the trial court judge determined that a curative instruction was the appropriate corrective means.

Upon review of the record, we hold that the curative instruction was clear that the weapons were not evidence in the case and were not to be considered by the jury.  Because of the vast weight of evidence against Moltz and his codefendants, the manner in which the guns were mentioned by Frankie and the clarity and decisiveness of the trial court judge's curative instruction, we do not find that a manifest probability existed that the jury's verdict was affected by hearing about the existence of these weapons.  Accordingly, we cannot say that the trial court abused its discretion.

## IV.  MOTION TO STRIKE

On appeal, when considering sufficiency of the evidence, this Court considers all the evidence and any reasonable inferences fairly deducible from it in the light most favorable to the Commonwealth.  See Higginbotham v. Commonwealth, 216 Va.

---

respect and a deliberate effort was made by the trial court to prevent the jury from seeing them.

-

349, 352, 218 S.E.2d 534, 537 (1975). The credibility of a witness, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). A trial court's judgment is not to be disturbed on appeal unless it is plainly wrong or without evidence to support it. See Code § 8.01-680.

Moltz was found guilty of conspiracy to commit robbery and as an accessory before the fact to the murder of Jackson and accessory before the fact to three robberies. Kahley testified that he and his friends had been involved in a dispute with Moltz and Adam. Frankie testified that Moltz approached him about participating in the robbery and that Pace was contacted. Moltz obtained a map of the house for the purpose of robbing the victims, showed it to Pace, Thomas and Nique and accompanied Adam in the car that led Pace, Thomas and Nique to the house. Kahley described the downstairs assailant as being dressed in black and using a gun with a laser site. Melton identified Thomas in a photo spread and at trial as the gunman who shot Jackson. Frankie testified that Pace, Thomas and Nique wore black clothes, that the following day Pace gave Frankie a bag containing a laser site and bullets, and informed him that the robbery had gone wrong and that a person and dog had been shot.

When acting in concert, all participants "may be held accountable for incidental crimes committed by another

-

participant during the enterprise even though not originally or specifically designed." Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994). When Jackson responded that he had no money, Thomas shot him in the head. This shooting occurred during an armed robbery that Moltz planned. Even if he did not anticipate someone being shot, "[a]n incidental and probable consequence of the use of a firearm in the commission of a robbery is that someone will get killed." Jones v. Commonwealth, 15 Va. App. 384, 389, 424 S.E.2d 563, 566 (1992); see Carter v. Commonwealth, 232 Va. 122, 126, 348 S.E.2d 265, 268 (1986). Accordingly, the evidence was sufficient to support the convictions.

V. MOTION TO SET ASIDE THE VERDICT

An "Allen charge" is appropriate "'[w]hen jurors have announced their inability to agree.'" Joseph v. Commonwealth, 249 Va. 78, 97, 452 S.E.2d 862, 868 (1995) (quoting Petcosky v. Brown, 197 Va. 240, 252, 89 S.E.2d 4, 13 (1955)). An "Allen charge" is given to explain the importance of the jury reaching an agreement and their duty to do so if they can without surrendering their individual consciences. See Poindexter v. Commonwealth, 213 Va. 212, 215, 191 S.E.2d 200, 203 (1972).

The Commonwealth correctly notes that the "Allen charge" given here did not ask the jurors to deviate from their

-

individual consciences to come to a verdict.[4]  The motion to set aside the verdict was properly denied.

## VI.  CONCLUSION

For the reasons stated, we affirm the convictions.

<u>Affirmed</u>.

---

[4] We also note that the fact that the jury may have compromised by convicting Moltz of some charges and acquitting him of others is not a basis for upsetting the verdict.  <u>See Reed v. Commonwealth</u>, 239 Va. 594, 597, 391 S.E.2d 75, 76 (1990); <u>see also</u>, <u>Dunn v. United States</u>, 284 U.S. 390, 394 (1932).