COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Senior Judge Overton
Argued at Richmond, Virginia


MICHAEL LEON BROOKS, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1629-03-2                      JUDGE NELSON T. OVERTON
                                                         JUNE 15, 2004
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                          Herbert C. Gill Jr., Judge

          Ned M. Mikula (R. Donald Ford, Jr.; Rudy & Mikula, on briefs), for
          appellant.

          Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


        In a bench trial, Michael Leon Brooks, Jr. (appellant) was found guilty as a principal in the

second degree of the abduction and felony murder of William Bouchier.  On appeal, appellant

challenges the sufficiency of the evidence to support his convictions, as well as the trial court's

post-trial ruling that the Commonwealth did not fail to disclose material exculpatory evidence as

required by Brady v. Maryland, 373 U.S. 83 (1963).  Finding no error, we affirm appellant's

convictions.

                                        FACTS

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the evening of December 6, 2001, appellant, his sister Kia Brooks (Brooks), Charles Harbison, Herbert Brown, and Gerald Walker visited Brandi Dalton's Chesterfield County home, which she shared with Jennifer Skiles and another woman. Appellant and Brooks had arrived at the home together in their father's car. Some members of the group smoked marijuana together in the living room of Dalton's home. During this activity, Skiles noticed appellant had a gun.

In appellant's presence, Dalton and Harbison discussed a plan to rob Bouchier. Dalton knew Bouchier was preparing to leave on a trip, and she thought he would be carrying drugs and money. Dalton contacted Bouchier by telephone to lure him to her home.

When Dalton announced Bouchier was a few minutes away from the house, appellant, Harbison, Brown, and Walker arose and walked down the hallway. Brooks went to the downstairs bathroom. From the bathroom, Brooks heard the front door open and shut and the sound of footsteps going upstairs. She heard thumping, stomping, and a yell. Brooks testified, "All I heard was noise . . . other than Mr. Bouchier's noise, nothing." Eventually, Dalton came to the bathroom and took Brooks upstairs to Dalton's bedroom.

Brooks saw Bouchier lying face down on Dalton's bed with a pillowcase over his head. Harbison was putting his weight on Bouchier to restrain him. Harbison kept asking Bouchier about money and a code. Dalton told Bouchier to "tell them what they want to know." Appellant was standing behind Harbison. At one point, Harbison picked up Bouchier and slammed him on the bed. Brooks assisted by placing duct tape around Bouchier's ankles.

Dalton said she wanted to get Bouchier out of the house. Harbison and Brown picked up Bouchier and took him to the hallway. Bouchier stood beside Harbison "for a minute." Brooks saw blood on the pillowcase covering Bouchier's head although she saw no blood in the hallway at that time.

Brooks later observed Bouchier being "walked down" the stairs. When Brooks went outside, she saw that Bouchier had been placed in the hatchback area of his own car.

Appellant, with Harbison and Bouchier as passengers, drove Bouchier's car away from Dalton's residence. Brooks and Dalton followed in a separate car as appellant led them to a remote site on Duval Road. Appellant, Harbison, and Dalton got out of the vehicles and stood together beside Bouchier's car. The hatchback of the car was open. Appellant instructed Brooks to position the vehicle she was driving to face the exit route. Brooks then observed Dalton walk to the rear of Bouchier's car and shoot Bouchier five times with a pistol. Appellant, Harbison, and Dalton quickly entered Brooks' vehicle. Harbison asked Dalton if she was sure Bouchier was dead. Dalton said, "He squirmed like a worm." Appellant commented, "I didn't think you would do it."

Brooks drove the group to Dalton's residence. Dalton and Harbison cleaned Dalton's bedroom and the upstairs of the house. They removed Dalton's bedding, the hallway blinds, and a carpet and placed the items in trash bags. They took the bags to Harbison's home, and Harbison subsequently burned them. Brooks dropped off appellant at the home of his girlfriend.

Earlier that evening, after smoking marijuana with the group, Skiles had gone to her bedroom and remained there with the door closed. At one point, she heard thumping, looked out the door, and saw Walker entering Dalton's bedroom. Later that night, after the rest of the group had left the house, Skiles saw blood on Dalton's bedroom door, the bathroom door, the closet doors, walls, a clothes hamper, blinds, and carpeting.

Karen Jones, Dalton's next-door neighbor and a frequent visitor at Dalton's home, received a telephone call from Dalton during the evening. Dalton asked Jones to enter the residence and look for Dalton's cellular telephone. When Jones did so, she saw bloody sheets

and towels in Dalton's bedroom and blood in the hallway and on the stairs. Jones was at Dalton's home when Dalton, Harbison, appellant, and Brooks returned. Jones observed Dalton and Harbison cleaning up blood and placing items in trash bags.

Bouchier's dead body was found in the rear of his vehicle the following day at the site on Duval Road. Bouchier had been shot five times, each of them a lethal wound. Three of the wounds were to the right side of the head. The other two gunshot wounds were to the chest and abdomen.

When the body was found, Bouchier's head was covered with a pillowcase that had two bullet holes in it. The pillowcase was secured with duct tape above Bouchier's mouth. Around Bouchier's head and under his body was a sheet with one bullet hole in it. What appeared to be spots of blood were on Bouchier's pants and socks.

The medical examiner opined that each of the three head wounds would have "result[ed] in instant fatality, instant incapacitation." Had Bouchier received any of these wounds while inside the house, he would have been unable to walk. The medical examiner further opined that if Bouchier had been shot in the chest inside the house, he "would have been able to stand for only a very short time." Bouchier also had suffered a number of superficial blunt force injuries, none of which would have produced significant bleeding or contributed to his death.

SUFFICIENCY OF THE EVIDENCE

Considering the amount of blood observed in Dalton's home and the immediately incapacitating nature of the gunshot wounds to Bouchier's head, appellant contends the evidence proved Bouchier was shot inside Dalton's house and was dead before he was placed inside the car. Therefore, appellant concludes, he could not have been guilty of abduction of a live victim and the resulting felony murder of that victim.

Reviewing the sufficiency of the evidence presented in the trial court, on appeal

> we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Thus, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (*en banc*).

The crime of abduction requires proof of an asportation or detention by force, intimidation or deception. See Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984). "Abduction is a continuing offense." Berkeley v. Commonwealth, 19 Va. App. 279, 286, 451 S.E.2d 41, 44 (1994). Appellant was convicted of abduction as a principal in the second degree, which

> may be indicted, tried, convicted and punished as if a principal in the first degree. See Code § 18.2-18. To convict based on this theory, the Commonwealth must prove the defendant was present at the scene and "'share[d] the criminal intent of the party who actually committed the [crime] or [was] guilty of some overt act in furtherance thereof.'" A defendant may be convicted as a principal in the second degree if he or she is present, "'keeping watch or guard at some convenient distance.'" "'[P]roof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, . . . the [fact finder] may infer that he assented thereto . . . .'"

- 5 -

<u>Allard v. Commonwealth</u>, 24 Va. App. 57, 62-63, 480 S.E.2d 139, 141-42 (1997) (citations omitted).

The evidence proved the abduction of Bouchier began long before Bouchier was driven from Dalton's home in the back of his own vehicle. Appellant, who was present when Dalton and Harbison discussed the plan to rob Bouchier, accompanied Harbison, Walker, and Brown when Dalton announced Bouchier was nearby. Appellant was armed with a gun. Thereafter, from the downstairs bathroom, Brooks heard the front door open and shut, followed by thumping, stomping, and a yell. Brooks subsequently observed appellant standing behind Harbison in Dalton's bedroom. Bouchier was forcibly restrained on the bed in Dalton's bedroom. Harbison and Dalton were interrogating Bouchier about the location of money and a code, demanding Bouchier tell them what they wanted to know. These facts supported a conclusion that appellant, standing guard and assenting to the activity, participated as a principal in the second degree in the abduction of Bouchier inside Dalton's home, when circumstances demonstrated Bouchier was alive.

However, even assuming *arguendo* appellant's responsibility for the abduction did not begin until he drove Bouchier's car from Dalton's house, the evidence proved that Bouchier remained alive at that juncture. In contending Bouchier was dead when taken from Dalton's home, appellant presumes the amount of blood observed inside Dalton's home demonstrated a substantial loss of blood from Bouchier, which could have come from one of the fatal gunshot wounds. However, although the evidence established the presence of some blood in the house after Bouchier was placed in the car, due to Dalton's and Harbison's cleaning efforts the record does not quantify the amount of blood in the house after the group left with Bouchier.

Moreover, as discussed above, that Harbison exerted force upon Bouchier while on the bed, demanding him to reveal information, further supports the conclusion Bouchier remained alive while in the house. Harbison's efforts would have had no purpose if Bouchier already had been shot and had died.

Brooks testified that Bouchier stood upright in the hallway beside Harbison for about a minute before he was taken to the car. Harbison walked, not carried, Bouchier down the stairs. Bouchier could not have stood or walked if he already was dead.

Brooks also testified Dalton shot Bouchier five times after they reached Duval Road. Bouchier sustained five gunshot wounds, thus strengthening the conclusion he was shot only on Duval Road. Had Bouchier been shot and killed while at Dalton's home, Dalton would have had no reason to shoot Bouchier at all, much less five times. Following the shooting, appellant commented that he did not think Dalton would "do it," implying Bouchier previously had not been shot while at the house. Dalton said Bouchier "squirmed like a worm" when she shot him.

Thus, the facts and circumstances proved beyond a reasonable doubt that Bouchier was alive at the time he was placed in the hatchback area of his vehicle and appellant drove him away from Dalton's residence. Accordingly, the trial court did not err in finding appellant guilty of abduction as a principal in the second degree.

Appellant also challenges his conviction for felony murder, which is murder "in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction." Code § 18.2-32.

> "The Supreme Court of Virginia has adopted the *res gestae* theory in applying the felony murder statute." "Under the *res gestae* theory, the felony murder doctrine applies when the 'initial felony and the homicide [are] parts of one continuous transaction, and [are] closely related in point of time, place, and causal connection.'" "In establishing this relationship, sufficient evidence

- 7 -

> must be presented from which the fact finder can conclude that the killing and the [underlying felony] were 'interdependent objects of a common criminal design.'"

Smith v. Commonwealth, 33 Va. App. 65, 71, 531 S.E.2d 608, 611 (2000) (citations omitted).

See also Berkeley, 19 Va. App. at 284-85, 451 S.E.2d at 45.

The Commonwealth's evidence proved that Bouchier's abduction and murder were causally connected and objects of a common criminal design. Dalton's and Harbison's plan to lure Bouchier to Dalton's home and rob him was announced in appellant's presence. Appellant was in the bedroom while Bouchier was detained and interrogated. After attempting to obtain money from Bouchier, appellant and others transported him to a secluded location in Bouchier's own vehicle. Appellant was the driver of Bouchier's vehicle. Appellant directed Brooks to turn her vehicle around to hasten their escape from the site. Dalton then shot Bouchier five times. Appellant, Dalton, Harbison, and Brooks left the scene together.

Considering this evidence, the Commonwealth proved beyond a reasonable doubt that the abduction and the murder were closely related in time, place, and cause and were interdependent objects of the same criminal design. Accordingly, the trial court did not err in finding appellant guilty of felony murder.

### FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

Appellant contends the trial court erred in refusing to grant him relief based upon the Commonwealth's failure to disclose evidence as required by Brady. The evidence in question was a recorded statement made by Jones to the police and prosecutors. The trial court examined Jones' statement *in camera* for Brady material, found it contained no such evidence, denied

appellant's request for relief, sealed Jones' statement, and made the statement a part of the record.[1]

"[A] defendant has no general constitutional right to discovery in a criminal case . . . ."

O'Dell v. Commonwealth, 234 Va. 672, 682, 364 S.E.2d 491, 497 (1988). However,

> "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. . . ." Disclosure is required where the evidence is both (1) favorable to the defendant, and (2) material either to guilt or to punishment.

Humes v. Commonwealth, 12 Va. App. 1140, 1142-43, 408 S.E.2d 553, 554 (1991) (citations omitted). "Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding." Bowman, 248 Va. at 133, 445 S.E.2d at 112 (citing United States v. Bagley, 473 U.S. 667, 682 (1985), and Robinson v. Commonwealth, 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986)). "In making a Brady challenge, '[a] defendant cannot simply allege the presence of favorable material and win reversal of his conviction. Rather, [he] must *prove* the favorable character of evidence he claims has been improperly suppressed. Speculative allegations are not adequate.'" Hughes v. Commonwealth, 18 Va. App. 510, 526, 446 S.E.2d 451, 461 (1994) (*en banc*) (citations omitted).

Appellant argues that if Jones said Dalton told her Bouchier was shot while he was inside the house, the evidence was exculpatory and material and should have been produced by the Commonwealth prior to trial. Even assuming Jones made the statement appellant claims, the

---

[1] The Supreme Court of Virginia has sanctioned such a procedure "where the prosecution and defense are at an impasse in their respective views of the nature of the evidentiary materials . . . ." Bowman v. Commonwealth, 248 Va. 130, 135, 445 S.E.2d 110, 113 (1994).

evidence was not material. An admission by Dalton that she shot Bouchier once while inside the house did not tend to prove that Bouchier was already dead when he was removed from the house. The evidence did not demonstrate that Bouchier's gunshot wounds to the chest and abdomen were immediately fatal or instantly debilitating. Indeed, as recited above, the evidence tended to prove that Bouchier was alive when he stood with Harbison in the hallway and then walked down the steps.

The record supports the trial court's finding that the Commonwealth did not suppress evidence it was required to disclose pursuant to Brady. Moreover, we have reviewed the sealed materials and conclude, as did the trial court, that the Commonwealth was not required to disclose them. Under the totality of the circumstances, there is not a "reasonable probability of a different result" had the materials been disclosed.

CONCLUSION

For the foregoing reasons, appellant's convictions are affirmed.

Affirmed.