**Salem**

NELSON JAMES KING

v.

COMMONWEALTH OF VIRGINIA

No. 0998-86-3

Decided May 17, 1988

COUNSEL

Thomas M. Jackson, Jr. (McGrady & Jackson, on brief), for appellant.

Robert Q. Harris, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—We consider whether the facts in this case constitute a violation of the felony-murder statute, Code § 18.2-33. Nelson James King appeals his conviction of second degree murder under the statute. He argues that he could not be convicted of second degree murder for the accidental death of a cofelon occurring during the commission of a felony. He also argues that the trial court erred in instructing the jury on the elements of the offense. We hold that because the death was not caused by an act of the felons in furtherance of the felony, appellant is not criminally liable for the death.

On October 17, 1984, King and his copilot, Mark Lee Bailey, were flying a Beechcraft Bonanza airplane carrying over five hundred pounds of marijuana to the New River Valley airport in Dublin, Virginia. They were flying for Wallace Thrasher, who

owned the airplane and ran the drug smuggling operation. King was a licensed pilot; Bailey was not. The two encountered heavy cloud cover and fog near Mt. Airy, North Carolina and apparently became lost. In an effort to navigate through the cloud cover and fog, they flew the plane to a lower altitude in order to follow U.S. Route 52. Bailey was piloting the plane at this time. As Bailey flew, King was examining navigation maps in an attempt to determine the plane's whereabouts. The airplane crashed into Fancy Gap Mountain killing Bailey almost instantly. King was thrown from the plane and survived. King was charged with felony homicide under Code § 18.2-33 for Bailey's death. A jury convicted King of second degree murder under the statute and recommended a six-year penitentiary sentence.

Code § 18.2-33 defines second degree felony homicide: "The killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32, is murder of the second degree and is punishable as a Class 3 felony." This statute and its companion, § 18.2-32, defining first degree felony-murder, codify the common law doctrine of felony-murder. *Heacock v. Commonwealth*, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984) (citation omitted). The doctrine was developed to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing. The justification for imputing malice was the theory that the increased risk of death or serious harm occasioned by the commission of a felony demonstrated the felon's lack of concern for human life. *See generally* Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. Pa. L. Rev. 50 (1956). The doctrine was originally limited, therefore, to felonies that were inherently or foreseeably dangerous. The purpose of the doctrine was to deter inherently dangerous felonies by holding the felons responsible for the consequences of the felony, whether intended or not. While the range of felonies which may be a predicate for the felony-murder conviction has changed, the function of the doctrine is still to elevate to murder a homicide resulting from a felony by imputing malice. *See Heacock*, 228 Va. at 403, 323 S.E.2d at 93.

Criminal statutes are to be "strictly construed against the Commonwealth and in favor of [a] citizen's liberty." *Martin v. Commonwealth*, 224 Va. 298, 300, 295 S.E.2d 890, 892 (1982).

Strict construction, however, does not justify nullification of the evident purpose and meaning of a statute. *See Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). A penal statute must be construed so as to proscribe only conduct which the legislature clearly intended to be within the statute's ambit. *Berry v. City of Chesapeake*, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969).

The second degree felony-murder statute in Virginia contemplates a killing with malice. *Heacock*, 228 Va. at 403, 323 S.E.2d at 93. Indeed, "the commission of *any* felonious act . . . supplies the malice which raises the incidental homicide to the level of second-degree murder." *Id.* It does not follow, however, that any death of any person which occurs during the period in which a felony is being committed will subject the felon to criminal liability under the felony-murder rule. To construe our statute to encompass every accidental death occurring during the commission of a felony, regardless of whether it causally relates to or results from the commission of the felony, is to make felons absolutely liable for the accidental death of another even though such death is fortuitous and the product of causes wholly unrelated to the commission of the felony. Recognizing the potentially harsh and far reaching effects of such a construction of the felony-murder doctrine, the Virginia courts, as well as others, have limited its application. In order for the incidental accidental killing to be murder, the homicide must be criminal in nature and must contain the elements or attributes of criminal homicide cognizable at common law.

One of the most significant factors in defining the scope of the felony-murder doctrine involves the causation required between the felony and the death. Previous decisions of the Virginia Supreme Court have found it unnecessary to decide whether "a mere nexus" between the death and predicate felony is sufficient to satisfy the statute or whether a more direct causal relationship is required. *See, e.g., Heacock*, 228 Va. 397, 323 S.E.2d 90 (1984). We must address that issue at this time.

In Virginia, it is clear when the homicide is within the *res gestae* of the initial felony and emanates therefrom, it is committed in the perpetration of that felony. *Haskell v. Commonwealth*, 218 Va. 1033, 1041, 243 S.E.2d 477, 482 (1978). The Court explained that "the felony-murder statute applies where the killing

is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." *Id.* at 1044, 243 S.E.2d at 483. Thus, the court in *Haskell* affirmed first degree murder convictions when the murder of a robbery victim was within five feet of the site of the robbery, within moments of the robbery, and was to facilitate the robbers' escape without being identified. Under these circumstances, the killing was obviously causally related to the robbery and was part of the same enterprise. *Id.* at 1043, 243 S.E.2d at 483. The Court did not elaborate on the degree of causal connection required under the statute.

In a more recent case, the Virginia Supreme Court affirmed a conviction under the felony-murder rule when a death by cocaine overdose was charged to the person who distributed the cocaine. *Heacock*, 228 Va. at 401-02, 323 S.E.2d at 92-93. In that circumstance, the court declined to address whether the felony-murder rule required a showing of causal relationship flowing from the felony to the homicide or whether a "mere nexus" would suffice because the death was a direct result of the felony of distribution of cocaine. *Id.* at 405, 323 S.E.2d at 94.

In a leading case involving the felony-murder doctrine, which the Virginia Supreme Court has cited with approval, the Pennsylvania Supreme Court addressed the causation problem at length. Rejecting their previous standard of proximate cause, the court stated:

> In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine . . . . "Death must be a consequence of the felony . . . and not merely coincidence."

*Commonwealth v. Redline*, 391 Pa. 486, 495, 137 A.2d 472, 476 (1958) (citations omitted). The court noted further: "[T]he 'causation' requirement for responsibility in a felony-murder is that the homicide stem from the commission of the felony." *Id.* at 505, 137 A.2d at 481. The *Redline* court noted that the malice of the underlying felony attaches to whatever else the criminal may do in

connection with the felony. Therefore, "the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking." *Id.* at 495-96, 137 A.2d at 476. (emphasis omitted).

The implications of this reasoning are threefold. First, only acts causing death which are committed by those involved in the felony can be the basis for a conviction. Second, the act causing death must result from some effort to further the felony before malice can be imputed to that act. Third, there must be some act attributable to the felons which causes death. It is not sufficient that death be only temporally related to commission of the felony. Death must be directly related in time, place, and causal connection to the commission of the felony; the felony or acts in furtherance thereof must contribute to cause the death to constitute a "killing" within the felony-murder statute.

Adhering to this causation requirement, the Pennsylvania court reversed a murder conviction where the cofelon was killed by police bullets. *Id.* at 509-10, 137 A.2d at 483. The court noted two problems with affirming the conviction. First, the act causing death was not committed by any of the felons, but rather by a third party. Indeed, the killing in *Redline* was justifiable because it was committed by a police officer in the line of duty; a justifiable homicide could not rationally support a murder charge which must involve an unlawful killing. *Id.* at 509, 137 A.2d at 483. Second, the killing was inflicted not by one in furtherance of the felonious undertaking, but by one opposed to it. Thus, the act that caused the death did not occur as a result of the effort to further the felony. *Id.* at 498-99, 137 A.2d at 478.

The *Redline* limitation was approved and adopted by the Virginia Supreme Court in *Wooden v. Commonwealth*, 222 Va. 758, 763-64, 284 S.E.2d 811, 815 (1981). In *Wooden*, the defendant was convicted of two counts of felony-murder. One of the men killed was the victim of a robbery in which Wooden participated; the other was a cofelon who was killed by the victim before he died. The court held that under the reasoning of *Redline*, no malice could be imputed to the defendant for the death of her cofelon because the killing was done by a third party who was resisting, not furthering the felony. Further, because the victim of the felony killed the cofelon and such a killing was justifiable, no unlawful homicide could be attributed to the felon. *Id.* at 762, 284

S.E.2d at 814; *see also People v. Antick*, 15 Cal. 3d 79, 91, 123 Cal. Rptr. 475, 482, 539 P.2d 43, 50 (1975); *State v. Canold*, 73 N.J. 206, ___, 374 A.2d 20, 30 (1977), *but see State v. Baker*, 607 S.W.2d 153, 156-57 (Mo. 1980).

In the present case, King and Bailey were in the airplane to further the felony of possession of marijuana with the intent to distribute. They were flying over the mountains while committing the felony. The time and the place of the death were closely connected with the felony. However, no causal connection exists between the felony of drug distribution and the killing by a plane crash. Thus, no basis exists to find that the accidental death was part or a result of the criminal enterprise. In the felony-murder cases cited above, death, to be considered an "accidental killing" within the statute, has resulted from a particular act which was an integral part of the felony or an act in direct furtherance of the felony—shooting a gun, striking a match, distributing cocaine. In this case, there is no such act which caused the death. Thus, there has been no homicide, or unlawful killing by another, for which a cofelon can be held accountable. Bailey, who was flying the plane at the time of the crash, was not killed by King or by any act of King which was in furtherance of the felony. We see no "act of killing" which we can attribute to King or to the felony. The felony-murder rule does not exist to enable courts to impute "the act of killing" where an accidental death results from fortuitous circumstances and the only connection with the felony is temporal. The cause of Bailey's death was Bailey's piloting and adverse weather conditions. The accident stemmed not from the possession or distribution of drugs, but from fog, low cloud cover, pilot error, and inexperience. Had Bailey and King been transporting drugs in an automobile when they encountered heavy fog and Bailey, not seeing a curve, had driven off the mountain, the legal consequences would be the same. The commission of the felony merely accounted for their presence at the location of the accident, and nothing directly related to the commission of the felony caused the accident. Thus, flying into the mountain was not a direct consequence of the felony. Had the plane been flying low or recklessly to avoid detection, for example, the crash would be a consequence or action which was directly intended to further the felony and a different result might obtain. *See People v. Ulsh*, 27 Cal. Rptr. 408, 416-17, 211 Cal. App. 2d 258, ___ (1962) (death in automobile accident a consequence of high speed chase during at-

tempted escape after felony).

 We adopt the Pennsylvania Supreme Court's analysis in *Redline* that the felony-murder rule provides for imputing malice to an accidental killing; it does not impute the act of killing. Therefore, if the accidental death, in the absence of imputed malice, would not have been a criminal homicide, then the statute does not elevate it to second degree murder and impute culpability for the death to a cofelon. Moreover, we hold that a death which results not from actions of the felons nor from acts directly calculated to further the felony or necessitated by the felony, but from circumstances coincident to the felony, is not a death for which a felony-murder conviction will obtain. "To punish as a murderer, every man who, while committing a heinous offense, causes death by pure misadventure, is a course which evidently adds nothing to the security of human life." *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, ____, 261 A.2d 550, 554 (1970).

 The Commonwealth argues that the jury could infer that King's conduct in the commission of the underlying felony was inherently dangerous to human life and that his action of putting the plane in a dangerous position and allowing an unlicensed pilot to fly caused the crash. Accepting without comment the Commonwealth's argument that the evidence established involuntary manslaughter based on King's antecedent negligence, the evidence still establishes no causal relationship between the felony of possession of marijuana and the death by plane crash. If King and Bailey had been transporting legal cargo that day, the crash would still have occurred. It is true, of course, that but for the felony, King and Bailey probably would not have been in the plane. However, criminal liability for felony-murder requires more than a finding that "but for" the felony the parties would not have been present at the time and location of the accidental death. The act or acts causing death must have been directly calculated to further the felony or necessitated by the commission of the felony. Such a causal connection is absent in this case.

Because we reverse the conviction on the grounds stated above, we do not address the issue of the trial judge's jury instructions.

*Reversed and dismissed.*

Koontz, C.J., and Keenan, J., concurred.