## Alexandria

GENEVA RAY TALBERT

v.

COMMONWEALTH OF VIRGINIA

No. 0677-92-4

Decided October 19, 1993

COUNSEL

Blair D. Howard (Howard, Leino & Howard, P.C., on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Geneva Ray Talbert (defendant) was convicted of distribution of cocaine and felony-murder related to the drug offense. Defendant argues on appeal that the trial court erred in (1) permitting the Commonwealth to impeach her testimony on a collateral issue, (2) failing to give the jury a cautionary instruction after ruling certain testimony inadmissible, and (3) instructing the jury on the definition of felony-murder. Defendant also contends that punishment for both the drug and felony-murder offenses violates the prohibition against double jeopardy. We agree that the jury was improperly instructed on felony-murder and reverse that conviction.

Viewing the evidence in the light most favorable to the Commonwealth, *Martin v. Commonwealth,* 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), the record discloses that on July 19, 1988, de-

fendant was "handling the sale" of a townhouse and had engaged Daniel Strohkirch and the victim, Fred Green, to effect certain repairs to the property. Defendant instructed Strohkirch to "take [a] bag of cocaine" to the townhouse and "give it to [Green]" after the "work was finished." Contrary to this instruction, however, Strohkirch delivered the drug to Green "right away," receiving $275 in exchange, which he later gave to defendant. Once in possession of the cocaine, Green immediately closed himself in the bathroom, and Strohkirch "left to run some errands." When he returned, Green was still "occupying the bathroom" but assured Strohkirch that he "would be out in a minute."

Shortly thereafter, defendant "showed up" and Strohkirch advised her that Green was in the bathroom, "doing the drugs." Defendant decided that Green "had to leave," and Strohkirch "knocked on the bathroom door." Green, who "looked in pretty bad shape," "came out after about a minute" but quickly returned and "locked the door," claiming to have seen a policeman. Strohkirch then heard a "loud thud from inside," "kick[ed] the door in" and discovered Green on the floor, "gasping for air." Despite medical attention, Green later died from "cocaine poisoning."

In pretrial defense motions, the trial court ruled that evidence of "prior distributions [of drugs] by the defendant to the alleged victim in the three months preceding [the date of Green's death was] . . . inadmissible." Nevertheless, Green's wife testified at trial, over defendant's objection, that defendant assured her "a few weeks" before Green's death that Green "could get the best from [defendant] in this town, the best cocaine." When the Commonwealth asked if defendant had also mentioned "anything . . . about customer satisfaction," the court sustained defendant's objection, noting that the inquiry "suggests, obviously, an on-going sort of commercial enterprise on [defendant's] part, and . . . the probative value of that particular question is well-exceeded by the prejudice."

Testifying in her own behalf, defendant denied that she had directed Strohkirch to deliver cocaine to Green. She described the events following her arrival at the townhouse and responded to several questions related to her absence from Virginia during a period prior to the homicide. On cross-examination, the Commonwealth questioned defendant's employment and "sources of income" on the date of Green's death.

Q: You had what as your source of employment on July 19th?. . .

Q: What other sources of income did you have on that day? . . .

Q: Did you have any sources of income from the sale of cocaine?

A: No sir.

Q: Did you ever tell anyone that you did?

A: I don't recall having said anything like that.

Q: Let me show you this document ma'am and ask you if you recognize it as a pre-sentence report?

A: Yes sir.

Q: Did you provide a statement as part of that pre-sentence report?

A: Yes sir. . . .

Q: Didn't you say in this statement —

Defendant's objection to the question was overruled, and the Commonwealth continued:

Q: Ms. Talbert, isn't it true that you told the probation officer on this report that you had a source of income, an illegitimate source of income from the sale of cocaine, and it terminated on the date of Fred Green's death, July 19, 1988?

A: Yes sir.

Relying upon *Simpson v. Commonwealth,* 13 Va. App. 604, 414 S.E.2d 407 (1992), defendant challenges this examination as improper impeachment of her previous "answer on a collateral issue." In *Simpson,* we held that

> [a] witness may not be cross-examined regarding any fact irrelevant to the issues on trial when that cross-examination is for the mere purpose of impeaching his credit by contradicting him. If such a question is inadvertently asked and answered, the witness's answer is conclusive. Furthermore, the witness may not be asked about any collateral independent fact "merely with a view to contradict him afterwards. . . ."

> A subject is collateral to the issues on trial unless the party cross-examining the witness is entitled to prove the subject in support of his or her own case.

*Id.* at 606-07, 414 S.E.2d at 409 (citations omitted). Stated differently, if cross-examination of defendant relative to her employment and income was irrelevant and inadmissible as a part of the Commonwealth's case-in-chief, it was collateral and her responses were not subject to impeachment. Defendant argues that such evidence was not admissible because it prejudiced her case with the suggestion that she "had been selling drugs for a long time."

■ It is "well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of . . . other crimes and offenses at other times, . . . is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged." *Kirkpatrick v. Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). This rule was created to protect the defendant from the "unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Sutphin v. Commonwealth,* 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985).

Alert to this danger, the trial court specifically excluded evidence of prior drug dealings between defendant and Green. *See Curtis v. Commonwealth,* 3 Va. App. 636, 638-39, 352 S.E.2d 536, 538 (1987) (whether the probative value outweighs the prejudicial effect is a decision for the trial judge). Consistent with this ruling, the Commonwealth examined defendant only with respect to her "employment on July 19th, [1988]," the offense date, and her "sources of income . . . on *that* day." (emphasis added). These inquiries followed Strohkirch's testimony and defendant's denial on direct that she had requested him to deliver drugs to Green on "the day in question." Clearly, evidence of money received by defendant from Green in exchange for the drugs was relevant to the distribution offense and could have been developed during the Commonwealth's case-in-chief through proofs related to defendant's income at that time. It was, therefore, not a collateral matter and was a proper object of cross-examination and impeachment once defendant offered herself as a witness. Code § 19.2-268; *see Smith v. Commonwealth,* 136 Va. 773, 777-78, 118 S.E. 107, 109 (1923).[1]

---

[1] However, even if collateral, defendant's denial of the offense on *direct* examination exposed the income aspects of the transaction to cross-examination and related impeachment. *See Santmier v. Commonwealth,* 217 Va. 318, 319-20, 228 S.E.2d 681, 682 (1976).

■ Defendant's contention that the trial court erroneously failed to give the jury a cautionary instruction, *sua sponte*, after ruling that the question to Green's wife and her response were inadmissible is also without merit. The record reflects that defendant neither requested the instruction nor moved for a mistrial when the Commonwealth recalled the testimony during closing argument to the jury. *See Martinez v. Commonwealth,* 10 Va. App. 664, 670, 395 S.E.2d 467, 471 (1990), *aff'd as modified,* 241 Va. 557, 403 S.E.2d 358 (1991); Rule 5A:18. "When a defendant . . . does not request [a cautionary] instruction . . . any error which may have been committed otherwise is waived." *Martin v. Commonwealth,* 11 Va. App. 397, 409, 399 S.E.2d 623, 629 (1990).

Defendant next complains that the trial court improperly instructed the jury on felony murder through Commonwealth's instruction "5-A"[2] rather than defense instruction "C".[3] She argues that this error permitted the jury to convict without proof "of some act by either Strohkirch or [herself] in furtherance of the felony which caused Green's death," a necessary element of felony murder. Our

> responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." It is elementary that a jury must be informed as to the essential elements of the offense; a

---

[2] "The defendant is charged with the crime of felony homicide. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

1. That Fred Green was killed; and

2. That the killing was accidental and contrary to the intention of the defendant; and

3. That the defendant had committed the felony of distribution of cocaine as an accessory before the fact; and

4. That the cocaine which was the subject of this distribution was ingested by Fred Green and his death resulted therefrom.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty . . . ."

[3] "The defendant is charged with the crime of second degree felony homicide. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

1. That Fred Leon Green was killed; and

2. That this death was accidental or contrary to the intention of the defendant; and

3. That the defendant or her accomplice was then committing the felony of distributing cocaine by committing some act in furtherance of said felony which act caused the death of Fred Leon Green.

If you find . . . ."

correct statement of the law is one of the "essentials of a fair trial."

*Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citations omitted).

■ By statute, felony murder includes "[t]he killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act" as "murder of the second degree." Code § 18.2-33. The doctrine originated in the common law

> to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing. The justification for imputing malice was the theory that the increased risk of death or serious harm occasioned by the commission of a felony demonstrated the felon's lack of concern for human life.

*King v. Commonwealth*, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988).

■ While the felonious distribution of drugs is obviously embraced by the statute, it will suffice as the predicate "initial felony" necessary to felony murder only "where the killing is so closely related . . . in time, place, and causal connection as to make it a part of the same criminal enterprise." *Haskell v. Commonwealth*, 218 Va. 1033, 1044, 243 S.E.2d 477, 483 (1978). The homicide must be "within the *res gestae*" of the underlying felony *and* "an emanation thereof." *Id.* at 1041, 243 S.E.2d at 482; *King*, 6 Va. App. at 355, 368 S.E.2d at 706. Thus, the death must be "temporally related to the commission of the felony," and the "felony or acts in furtherance thereof must contribute to cause" it. *King*, 6 Va. App. at 357, 368 S.E.2d at 707.

The instruction in issue required the Commonwealth to prove, *inter alia*, "[t]hat the cocaine which was the subject of this distribution was ingested by Fred Green and his death resulted therefrom." This language sufficiently identified and defined for the jury the necessary causal connection between the predicate felony and the homicide as an element of the felony murder offense. However, felony-murder also requires that the homicide occur within the *res gestae* of the predicate offense, and the fact finder must determine in each case if the underlying felony has been completed, terminated, or abandoned for purposes of this element. *Haskell*, 218 Va. at 1043, 243 S.E.2d at 483. If the initial felony and the homicide were separated by time, place or other circumstances, they were not "parts of one continuous transac-

tion," *id.* at 1041, 243 S.E.2d at 482, and the killing did not occur "in the prosecution of some felonious act" in violation of Code § 18.2-33. *See* Code § 18.2-33.

In *Hickman v. Commonwealth,* the defendant was convicted of felony murder after assisting the deceased procure and consume cocaine. 11 Va. App. 369, 398 S.E.2d 698 (1990), *aff'd per curiam,* 242 Va. 263, 410 S.E.2d 88 (1991). There, the jury was instructed that, to convict of felony-murder, the Commonwealth must prove "[t]hat the defendant was *then committing* the felonies of distribution of cocaine or possession of cocaine . . . which caused the death." *Id.* at 373 n.1, 398 S.E.2d at 700 n.1 (emphasis added). This instruction clearly required a finding that the killing had occurred within the *res gestae* of the predicate felony and was approved by the court. *Id.* at 373, 398 S.E.2d at 700.[4]

In contrast, the instruction in dispute did not properly admonish the jury that second degree felony-murder must be a part of the *res gestae* of the predicate felony. Instead, it required only that the Commonwealth prove that defendant "had committed" the underlying felony, distribution of cocaine, at some previous time, perhaps transactionally distinct from the death, and, therefore, erroneously stated the law.

■ Lastly, defendant contends that convictions of both the drug and murder offenses violated her "constitutional rights under the double jeopardy clause" of the Constitution of the United States. Though defendant did not raise this issue before the trial court, she relies on *Darnell v. Commonwealth,* 12 Va. App. 948, 408 S.E.2d 540 (1991), to save the argument for appeal. In *Darnell,* we held that "Rule 5A:18 does not bar an appeal of an issue where the law has changed between trial and appeal." *Id.* at 953, 408 S.E.2d at 542. However, the law applicable to defendant's double jeopardy claim did not change between her trial and this appeal. *See Fitzgerald v. Commonwealth,* 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied,* 459 U.S. 1228 (1983); *Spain v. Commonwealth,* 7 Va. App. 385, 373 S.E.2d 728 (1988). Therefore, defendant's reliance on *Darnell* is misplaced, and we may not consider this issue on appeal. Rule 5A:18.

---

[4] The instruction was also consistent with *Virginia Model Jury Instructions, Criminal,* No. 34.340 (1989 & Supp. 1992).

Accordingly, the judgment of the trial court is reversed with respect to the murder conviction only, and this case is remanded for such further proceedings as the Commonwealth deems appropriate.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Baker, J., and Fitzpatrick, J., concurred.