COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


OTTIS LEE WAINWRIGHT

MEMORANDUM OPINION[*] BY
v.    Record No. 0166-99-2          JUDGE NELSON T. OVERTON
                                         MAY 16, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Gregory W. Franklin, Assistant Public
Defender (David J. Johnson, Public Defender,
on brief), for appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Ottis Lee Wainwright, appellant, appeals his convictions for

rape, forcible sodomy, abduction with intent to defile, and

robbery. Appellant contends that the trial court erred by

allowing the prosecution to use appellant's previously suppressed

statement for a purpose other than impeachment. For the following

reasons, we find no error and affirm the convictions.

## Facts

On the morning of April 11, 1998, the victim was walking near

the intersection of "1st Street and James" when appellant grabbed

her and forced her to walk with him. Appellant threatened to kill

_____

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the victim if she screamed, and told her to act like they were "girlfriend and boyfriend" as they walked. Appellant took the victim directly to a nearby abandoned house where there was a mattress on the floor. Appellant, while promising not to do anything to his victim if she stayed quiet, put her on the mattress and removed some of her clothing. Appellant put his tongue on the victim's vagina. Thereafter, he put his penis into her vagina. The victim was crying and begging to leave so she could see her "little girl" again. Appellant said he would not kill her if she stayed quiet. Then appellant sat on top of his victim and forced her to suck his penis. After several other acts of sodomy, appellant had sexual intercourse again with his victim. When appellant was finished, he helped the victim dress. Appellant took $335 and a pack of bus tickets from the victim's pocketbook. As appellant and the victim walked away from the abandoned house, he told her "to walk out here like nothing happened." Appellant walked up "Saint James Street," and the victim fled to a friend's house.

At trial, appellant admitted having sexual intercourse with the victim, "playing" with her vagina, and putting his penis into her mouth, but denied that he threatened or forced her to commit these acts. Appellant claimed that when he saw the victim walking on the street, she proposed to have sex with him for $15. According to appellant, the victim told him to follow her and she led him to a mattress located at the back of a house. Appellant

-

claimed he did not know where they were going or that a mattress was at the house.  After the encounter, the victim asked for her $15, but appellant only had $5.  Appellant claimed the victim refused to accept his $5 and said she wanted her money if she ever saw him again.  Appellant denied taking anything from the victim's pocketbook.

During cross-examination, appellant explained that a "smitty" was "an old house that's not used for anything."  The prosecutor questioned appellant about his knowledge of abandoned houses in the vicinity of the house where the victim was raped.  He admitted that during the weekend of the incident, he had slept in an empty house, but denied that it was in the "Saint James" area where the incident occurred.  The prosecutor confronted appellant with a statement appellant had made to the police, and that was later suppressed because of a Miranda violation, that on the night before the incident, he had stayed in a "smitty" in "Saint James bottom."

## Analysis

Appellant contends on appeal that the trial court erred in allowing the prosecution to use his previously suppressed statement during cross-examination about where he stayed the night before the incident.  It is well settled that a statement obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), may be used by the government to impeach the defendant's credibility if he or she chooses to testify.  See Harris v. New York, 401 U.S.

-

222, 226 (1971); Blaylock v. Commonwealth, 26 Va. App. 579, 596-97, 496 S.E.2d 97, 105-06 (1998).

Appellant's statement to the police that he stayed in an abandoned house in Saint James bottom the night before the offenses contradicted his testimony on direct that he was not familiar with the location where the crimes occurred. Appellant's knowledge of the area where the crimes occurred and his knowledge of whether a mattress was located in the abandoned house was relevant to the validity and accuracy of his denials that he accosted the victim and forced her to go to the abandoned house. This subject was relevant to the proof of the charged offenses, was not a collateral matter, and was a proper subject of cross-examination and impeachment once appellant offered himself as a witness. See Talbert v. Commonwealth, 17 Va. App. 239, 243, 436 S.E.2d 286, 288 (1993). Accordingly, the trial court did not err in admitting appellant's statement for impeachment purposes.[1]

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

---

[1] Assuming, arguendo, that the trial judge misspoke in saying the evidence went to "motive," appellant's statement was clearly admissible impeachment evidence. Therefore, the judgment should be affirmed. See Driscoll v. Commonwealth, 14 Va. App. 449, 451, 417 S.E.2d 312, 313 (1992) (judgment upheld where court reached right result for the wrong reason).

-