COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons[*] and Frank
Argued at Chesapeake, Virginia


AMY JEAN BARRETT
                                           OPINION BY
v.    Record No. 0833-99-1         JUDGE JERE M. H. WILLIS, JR.
                                           JUNE 27, 2000
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF YORK COUNTY
              Prentis Smiley, Jr., Judge

         David B. Hargett (Joseph D. Morrissey;
         Morrissey & Hershner, PLC., on brief), for
         appellant.

         Marla Graff Decker, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


     On appeal from her convictions of child abuse or neglect,

in violation of Code § 18.2-371.1(A), and felony murder, in

violation of Code § 18.2-33, Amy Jean Barrett contends (1) that

the evidence was insufficient to support her conviction for

felony child neglect, (2) that the trial court erred in refusing

to instruct the jury on the definition of "willful," and

(3) that the trial court erred in refusing to vacate the murder

conviction.  We affirm the trial court's judgment on the first

issue but reverse on the second and third issues.  We remand the

---

[*] Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

case for retrial on proper instruction as to child abuse or neglect, if the Commonwealth be so advised.

## I.  Background

Under well-settled principles, we view the evidence in the light most favorable to the Commonwealth, the prevailing party below.

Barrett and her two children, Patricia, aged two years ten months, and Joshua, aged ten months, lived with Barrett's boyfriend, Craig Griffith.  On the evening of April 17, 1998, Barrett put her children to bed and went out.  She stayed out all night, drinking beer.  She returned home about 5:30 a.m. and went to bed.  When Griffith left at approximately 7:00 a.m., Barrett awoke and tended to the children.  She left Patricia playing in her room and gave Joshua a bottle in the living room.  Soon thereafter, she fell asleep on the couch, with Joshua on the floor in front of her.

Shortly before noon, Griffith returned to find Barrett asleep on the couch and Patricia watching television.  Griffith found Joshua in the bathtub, which was full of water.  A laundry basket full of toys and blankets had been thrown over him.  While Barrett slept, Patricia had run water in the tub, placed Joshua in the tub, and then covered him with the laundry basket.  Griffith attempted to resuscitate Joshua, but the infant had drowned.

-

Prior to the fatal incident, Patricia had demonstrated jealousy and extremely dangerous aggressiveness toward Joshua. She had hit him, pushed him, choked him, and attempted to smother him.  Several days earlier, Patricia had pulled Joshua into the bathtub with her.  On that occasion, Barrett acknowledged that it was fortunate that she was there to save Joshua.

Barrett had acknowledged before the fatal incident that there was something wrong with Patricia's attitude and behavior toward Joshua.  She had been warned by others that the children required close supervision.  She knew that Patricia could put Joshua in the tub and that she could run the water.  The serious and likely hazard of leaving the children unsupervised was plainly foreseeable.  Yet, Barrett did not place Joshua in his crib, but left him, without supervision, where he was accessible to Patricia.

The jury found Barrett guilty of child abuse or neglect, in violation of Code § 18.2-371.1(A), and felony murder, in violation of Code § 18.2-33.  She was sentenced to five years imprisonment for the murder and two years for the child abuse.

## II.  Sufficiency of the Evidence to Prove Child Abuse or Neglect

Code § 18.2-371.1(a) provides:

> [a]ny parent . . . who by willful act or
> omission or refusal to provide any necessary
> care for the child's health causes or
> permits serious injury to the life or health

-

                    of such child shall be guilty of a Class 4
                    felony.

Id.

     Barrett contends that the evidence was insufficient to

support her conviction of child abuse or neglect, because it

failed to prove that she acted with the requisite criminal

intent.  She argues that the evidence did not prove that she

acted willfully to create a dangerous situation.  She argues

that she tended to the children, that they were playing

peacefully, and that she did not intentionally fall asleep or

otherwise willfully place either child in danger.  We disagree.

               When considering the sufficiency of the
          evidence on appeal of a criminal conviction,
          we must view all the evidence in the light
          most favorable to the Commonwealth and
          accord to the evidence all reasonable
          inferences fairly deducible therefrom.

Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 718,

721 (1988).

     So viewed, the evidence established that, by staying out

all night drinking beer, Barrett rendered herself unable to give

proper attention to her children; that having slept only one and

one-half hours, she made no effort to obtain assistance or to

keep herself awake; that she sat on the couch where she

succumbed to sleep; that knowing of Patricia's previous,

potentially lethal, conduct toward Joshua, she nonetheless left

the children unattended with no provision to protect Joshua from

Patricia's known aggressiveness; and that she did all these

                              -

things knowingly and intentionally.  These proven facts support the finding that Barrett, by willful act or omission and by her refusal to provide necessary care for Joshua's safety, permitted him to suffer death.  Accordingly, the evidence was sufficient to support Barrett's conviction for felony child abuse or neglect, in violation of Code § 18.2-371.1.

### III.  Jury Instruction

Barrett contends that the trial court erred in refusing to instruct the jury on the meaning of the word "willful," as used in Code § 18.2-371.1.  The Commonwealth argues that "willful" is a commonly used term, requiring no further elaboration.  We disagree.

> "Willful" [as used in Code § 18.2-371.1] generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. The term denotes "'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'"  The terms "bad purpose" or "without justifiable excuse," while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality.

Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (citations omitted).

An understanding of the meaning of the term "willful," as used in Code § 18.2-371.1, was central to a proper assessment of the felony child abuse and neglect charge in the context of the evidence.  An instruction explaining that term should have been

-

given on request.  We find that the trial court erred in refusing to do so and, for this reason, reverse the conviction.

### IV.  Murder Conviction

Barrett next contends that the trial court erred in refusing to set aside her felony murder conviction.  She argues that Joshua's death was not caused by any act committed in furtherance of the underlying felony, child abuse or neglect. We agree.

Code § 18.2-33 provides:

> The killing of one accidentally, contrary to
> the intention of the parties, while in the
> prosecution of some felonious act . . . is
> murder in the second degree and is
> punishable as a Class 3 felony.

Id.

Unquestionably, a direct stream of causation connected Barrett's dereliction to Patricia's conduct and Joshua's death. However, causal connection is not the criterion by which culpability for felony murder is determined.  For felony murder to exist, the killer must act with malice, which is imputed to him by his commission of the underlying felony.  See Wooden v. Commonwealth, 222 Va. 758, 763-65, 284 S.E.2d 811, 814-16.

> The second degree felony-murder statute
> in Virginia contemplates a killing with
> malice.  Indeed, "the commission of any
> felonious act . . . supplies the malice
> which raises the incidental homicide to the
> level of second-degree murder."  It does not
> follow, however, that any death of any
> person which occurs during the period in
> which a felony is being committed will

-

> subject the felon to criminal liability
> under the felony-murder rule. . . . In order
> for the incidental . . . killing to be
> murder, the homicide must be criminal in
> nature and must contain the elements or
> attributes of criminal homicide cognizable
> at common law.

King v. Commonwealth, 6 Va. App. 351, 355, 368 S.E.2d 704, 706

(1988).

> The implications of this [rule] are three
> fold.  First, only acts causing death which
> are committed by those involved in the
> felony may be the basis for a conviction.
> Second, the act causing death must result
> from some effort to further the felony
> before malice can be imputed to that act.
> Third, there must be some act attributable
> to the felons which causes death.

Id. at 357, 368 S.E.2d at 707.

Unquestionably, Patricia's conduct fit none of the three prongs of the felony murder rule.  She was not involved in the underlying felony of Barrett's child abuse or neglect.  Her conduct involved no effort on her part to further that felony.  She acted independently and her conduct cannot be attributed to Barrett.  Therefore, although Barrett's commission of the underlying felony would impute malice to her in the commission of any act in furtherance of that felony, Patricia's conduct did not constitute a killing attributable to Barrett, which, clothed with the imputation of malice, constituted felony murder.

The Commonwealth argues that Patricia acted as Barrett's agent.  None of the elements of agency existed.  We will not

-

accept such a forced construction of the facts.  See <u>Scott v. Commonwealth</u>, 14 Va. App. 294, 296, 416 S.E.2d 47, 48 (1992).

The evidence fails to support Barrett's conviction for felony murder.  Therefore, we reverse Barrett's conviction for felony murder and remand the case to the trial court for further proceedings, if the Commonwealth be so advised.

## V.  <u>Conclusion</u>

We reverse Barrett's conviction for felony child abuse and neglect and remand it to the trial court for retrial on proper instruction, if the Commonwealth be so advised.  We reverse Barrett's conviction for felony murder and remand that indictment to the trial court for further proceedings, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

-