# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Tammy Futrell

Case No. CR11-0211

By Judge Charles E. Poston

September 30, 2011

Upon consideration of the pleadings, arguments presented, and applicable authority, the Court denies the Defendant's motion to dismiss her felony homicide indictment under § 18.2-33 and her felony child neglect indictment under § 18.2-371.1. While the defendant has presented compelling arguments that draw the Commonwealth's case into serious question, the Commonwealth is, nonetheless, entitled to an opportunity to present evidence that is required in this particular case to prove the defendant's guilt under theories of felony child neglect and felony homicide.

In support of her Motion to Dismiss, the Defendant advances eight arguments, all of which effectively contend that the Commonwealth either cannot prove that the Defendant's acts or omissions were the proximate cause of the victim's death or that the Defendant was criminally negligent. In response, the Commonwealth asserts an expert witness will testify at trial that the Defendant created conditions that were contributing factors to the victim's death and also that her conduct rises to the level of criminal negligence.

Because the Commonwealth has not had an opportunity to present evidence it asserts will help establish causation and criminal negligence, the Defendant's Motion to Dismiss at this stage is premature and, thus, denied. However, given that SIDS is a diagnosis of exclusion when no

cause of death can be established, *see, e.g., Fairfax Hosp. System, Inc. v. Curtis*, 249 Va. 531, 534 (1995); *State v. Aten*, 927 P.2d 210, 221 (Wash. 1996), the Commonwealth must, *in good faith*, present evidence that will establish the Defendant's guilt beyond a reasonable doubt.

January 3, 2012

This matter is before the Court upon further consideration of the Defendant's motion to dismiss the indictment charging her with felony homicide in violation of Virginia Code § 18.2-33. Following the issuance of a letter opinion dated September 30, 2011, denying the motion, the Court, *sua sponte*, considered the motion further and conducted another *ore tenus* hearing on the motion. The Court will grant the motion and dismiss the indictment.

### *Facts*

Consistent with familiar principles, in considering this motion, the Court will view the facts in the light most favorable to the Commonwealth, the nonmoving party.

The Defendant, Tammy Futrell, was the director of Little Eagles Day Care, a childcare facility affiliated with the Bethel Temple Church of Deliverance in Norfolk, Virginia. Because Little Eagles Day Care was a religiously affiliated child daycare center, it was exempt from licensure pursuant to § 63.2-1716 of the Code of Virginia. As a religiously exempt childcare facility, Little Eagles Day Care was not subject to regulations prescribed by the Child Day Care Council, and it was excluded from the mandatory, biannual inspections of state licensed daycare centers. Dylan Cummings, a seven-week-old child, was enrolled at Little Eagles Day Care at the time of his death.

On May 25, 2010, the morning of Dylan's death, Juanita Bell had been working in the infant room at Little Eagles Day Care when she noticed that Dylan was trying to "catch his breath" while lying on his stomach. Ms. Bell did not inform anyone about this event and left for a doctor's appointment, leaving Dinnetta Feeney as the sole caretaker for Dylan and nine other infants.

At 11:30 a.m., Ms. Feeney placed Dylan on his stomach to sleep, as was the practice at Little Eagles. The room was warm, stuffy, very small, and dark, and Dylan's crib consisted of two foam pads and an ill-fitting sheet. Ms. Feeney then turned out the lights and joined the Defendant for lunch in a room nearby but out of eyesight and earshot of Dylan. She did, however, occasionally check on Dylan and the other infants.

At approximately 2:00 p.m., Ms. Feeney found Dylan lifeless and with "vomit or liquid" coming out of his mouth and soiling the sheets.

The church's janitor soon initiated CPR. The paramedics arrived at around 2:10 p.m., took over performing CPR on Dylan, and ultimately pronounced Dylan dead at the scene.

After performing an autopsy on Dylan, the medical examiner determined that Dylan was "well cared for and appropriately fed." Furthermore, the medical examiner concluded that "the scene investigation, doll scene re-enactment, and autopsy are all consistent with SIDS," sudden infant death syndrome. The Decedent's certificate of death clearly states that the cause of death was SIDS.

## Procedural Posture

On January 5, 2011, the grand jury returned a true bill of indictment against the Defendant on two counts: first, felony child neglect, Va. Code Ann. § 18.2-371.1(A) (2006), and second, felony homicide resulting from felony child neglect, Va. Code Ann. § 18.2-33 (1999). On April 22, 2011, the Defendant moved the Court to dismiss both counts of the indictment to which the Commonwealth filed a brief in opposition. The Defendant then submitted her written response. In a letter opinion dated September 30, 2011, the Court declined to grant the Defendant's motion to dismiss:

> Because the Commonwealth has not had an opportunity to present evidence it asserts will help establish causation and criminal negligence, the Defendant's Motion to Dismiss at this stage is premature and, thus, denied. However, given that SIDS is a diagnosis of exclusion when no cause of death can be established, *see, e.g., Fairfax Hosp. System, Inc. v. Curtis*, 249 Va. 531, 534 (1995); *State v. Aten*, 927 P.2d 210, 221 (Wash. 1996), the Commonwealth must, *in good faith*, present evidence that will establish the Defendant's guilt beyond a reasonable doubt.

On November 3, 2011, the Court, by letter, posed three questions to which counsel responded at a hearing on November 29, 2011:

(1) Does the Commonwealth or the Defendant challenge the medical examiner's determination that the sole cause of death was Sudden Infant Death Syndrome (SIDS)?

(2) Does either the Commonwealth or the Defendant have any evidence from expert witnesses that any act or acts of the Defendant *caused* the child's death from SIDS?

(3) If the answer to question numbered 2 is in the affirmative, can SIDS be the cause of death in light of the definition of SIDS offered in *Fairfax Hospital System v. Curtis*, 249 Va. 531, 534 (1995)?

At the hearing, the Defendant and the Commonwealth reaffirmed that SIDS was the *only* cause of death. (Hr'g Tr. 3, Nov. 29, 2011.) However, they differed on the questions of whether there is evidence of causation and whether SIDS precludes a finding of proximate cause.

The Defendant asserts that SIDS is an "unexplained" death and that the Commonwealth cannot produce admissible evidence showing "beyond a reasonable doubt that the Defendant *caused* an 'unexplained death'." (Def.'s Resp. to Nov. 3, 2011, Letter Op. 1–2) (emphasis in original). Furthermore, the Defendant states that, under *Fairfax Hospital*, risk factors that are positively correlated with the likelihood of SIDS are insufficient to prove causation, and therefore, "it is impossible for the Commonwealth to obtain in good faith, a criminal conviction for the death of [Dylan]." (Def.'s Resp. to Nov. 3, 2011, Letter Op. 1–2.)

The Commonwealth argues that the Defendant knowingly exposed Dylan to these SIDS risk factors, but the Commonwealth conceded that these SIDS risk factors did not constitute the "cause" of the child's death. (Hr'g Tr. 6–7, Nov. 29, 2011.) Nevertheless, the Commonwealth maintains that its expert witness will testify that the Defendant created conditions that increased Dylan's risk of death from SIDS and were contributing factors to Dylan's death. (Hr'g Tr. 6–7, Nov. 29, 2011.) These factors include placing Dylan on his stomach to sleep, lacking appropriate supervision, placing loose sheets on the bed, having no crib mattress, and permitting Dylan to sleep in a room that was allegedly too warm.

## Discussion

Under Rule 3A:9(b) of the Rules of the Supreme Court of Virginia, the Court may make a pretrial determination in this matter. Because the Commonwealth has stipulated to the evidence it would present at trial regarding Dylan's cause of death, the only two issues before the Court are whether SIDS, as the sole cause of death, excludes a finding of proximate cause and whether the Defendant can, therefore, be convicted of felony homicide.

### A. *Causation in SIDS Cases*

In 1993, the General Assembly codified the generally accepted medical definition of SIDS: " 'Sudden Infant Death Syndrome' (SIDS), a diagnosis of exclusion, means the sudden and unexpected death of an infant less than eighteen months of age whose death remains unexplained after a thorough postmortem examination which includes an autopsy." Va. Code Ann. § 32.1-285.1 (1993). No reported Virginia cases have interpreted this statutory language, but the plain language of the statute is clear, the General Assembly intended SIDS to encompass an occasion when an infant's cause

of death cannot be determined. This interpretation of SIDS is consistent with current medical understandings.

For example, the Centers for Disease Control and Prevention and the National Institute of Decedent Health and Human Development have both defined SIDS as a sudden and unexpected death of an infant under the age of one year that has no cognizable cause. Ctrs. for Disease Control & Prevention, U.S. Dep't of Health & Human Servs., Sudden Unexpected Infant Death and Sudden Infant Death Syndrome (last visited Dec. 27, 2011), http://www.cdc.gov/sids/ ("Sudden Infant Death Syndrome (SIDS) is defined as the sudden death of an infant less than one year of age that cannot be explained after a thorough investigation is conducted, including a complete autopsy, examination of the death scene, and review of the clinical history."); Nat'l Insts. of Health, Nat'l Inst. of Decedent Health & Human Dev. (last visited Dec. 27, 2011), http://www.nichd.nih.gov/health/topics/ Sudden_Infant_Death_Syndrome.cfm ("SIDS is the sudden, unexplained death of an infant younger than one year old. . . . [and h]ealth care providers do not know what exactly causes SIDS. . . .").

Virginia's statutory definition of SIDS is substantially the same as those recognized by courts in Virginia and elsewhere that have addressed SIDS-related cases. In *Fairfax Hospital System, Inc. v. Curtis*, the Virginia Supreme Court cited testimony from the defendant's expert witness that defined "near-SIDS" as "an exclusionary medical diagnosis which is rendered when health care providers are unable to attribute an infant's life-threatening event to any other medical reason." 249 Va. 531, 534 (1995). Also, in *State v. Reed*, the Supreme Court of Maine quoted the medical examiner's testimony, stating that SIDS is "a 'cause' of death[,] although it really means there is no known cause, whether natural or unnatural; it is synonymous with 'undetermined'." 676 A.2d 479, 480 (Me. 1996). In *Estate of Shelby Brooke LePage v. Horne*, the Supreme Court of Connecticut defined SIDS as "the sudden death of an infant under one year of age which remains unexplained after a thorough case investigation, including performance of a complete autopsy, examination of the death scene, and a review of the clinical history." 809 A.2d 505, 512 (Conn. 2002) (quoting M. Willinger, L. James, & C. Catz, "Defining the Sudden Infant Death Syndrome (SIDS): Deliberations of an Expert Panel Convened by the National Institute of Decedent Health and Human Development," 11 *Pediatric Pathology* 677, 681 (1991)). Also, the court acknowledged "the ongoing debate as to the cause of SIDS" and stated that "various theories have been advanced to explain such deaths. . . . [but] none has been generally accepted or demonstrated at autopsy." *Id.* at 513, 515 (quoting *Stedman's Medical Dictionary* (26th ed. 1995)).

As Va. Code Ann. § 32.1-285.1 and medically and judicially recognized definitions of SIDS clearly establish, a death caused by SIDS is one resulting from an unexplained cause. Therefore, a finding of SIDS as the

sole cause of death necessarily excludes any legal or proximate "cause" of death because it is medically impossible to establish a real and foreseeable cause.

In its brief in opposition and at the November 29, 2011, hearing, the Commonwealth asserted that the Defendant knowingly placed Dylan in an environment that contained several risk factors and that these risk factors significantly increased Dylan's risk of dying from SIDS. The Defendant, on the other hand, argues that the correlation between these risk factors and SIDS is insufficient to establish a proximate cause in this case.

While the cause of SIDS remains unknown, medical professionals have discovered certain factors that are correlated with an increased or decreased risk of an infant's dying from SIDS. These healthcare providers recommend that babies sleep on their backs, on firm surfaces with fitted sheets, away from loose bedding and toys, in clothes and in environments in which they will not overheat, with a pacifier, and in their own beds. *See generally* Task Force on Sudden Infant Death Syndrome, "SIDS and Other Sleep-Related Infant Deaths: Expansion of Recommendations for a Safe Infant Sleeping Environment," 128 *Pediatrics* 1341 (2011), *available at* http://pediatrics.aappublications.org/content/128/5/e1341.full.pdf. Other risk factors include the infant's age and race, whether the mother smoked or drank while pregnant, whether the baby was born prematurely, whether the mother breast-fed, whether there is a family history of SIDS, and whether the mother was under the age of twenty when she gave birth. Mayo Clinic, Sudden Infant Death Syndrome (SIDS): Risk Factors (last visited Dec. 27, 2011), http://www.mayoclinic.com/health/sudden-infant-death-syndrome/DS00145/DSECTION=risk-factors. However, medical professionals still agree that, despite all efforts to mitigate these risks, "sudden infant death syndrome can strike any infant." *Id.*

In *Fairfax Hospital System, Inc. v. Curtis,* the plaintiff sued the defendant hospital after a newborn under a hospital employee's care went into cardiopulmonary arrest for ten to forty minutes, with resulting brain damage that, allegedly, caused the infant to die several months later. 249 Va. 531, 532–34 (1995). The plaintiff's expert witness testified that the employee left the child face down on the mattress, thereby causing the sequence of events that led to the child's death. In contrast, an expert witness for the defense testified that, rather than suffocation, the event was caused by near-SIDS and that the child's mother had engaged in behavior during pregnancy that increased the likelihood of SIDS or near-SIDS. *Id.* at 535. (Near-SIDS (also known as ALTE, or apparent life-threatening event) "is an episode in which an infant demonstrates a significant behavioral or physical change that may reflect a serious physiological problem." James M. Callahan, *Basic Life Support Provider: Pediatric Education for Prehospital Professionals* 210–11 (2009). "Half of the time, no cause is found despite hospital workup." *Id.*) The Supreme Court of Virginia held:

> A medical opinion based on a "possibility" is irrelevant, purely speculative, and, hence, inadmissible. In order for such testimony to become relevant, it must be brought out of the realm of speculation and into the realm of reasonable probability; the law in this area deals in "probabilities" and not "possibilities."

*Id.* Specifically, the court held that the trial court did not err in refusing to permit the defendant's expert witnesses to opine that there was a possibility that the SIDS factors may have caused the child's cardiopulmonary arrest. The court reasoned:

> [The defendant's] expert witnesses could show only a generalized and insignificant statistical correlation between an infant's increased risk of SIDS or a near-SIDS event and the aforementioned risk factors. None of the [defendant's] expert witnesses could testify that any of these selective factors — the mother's history of diabetes, prenatal trauma, seizures, or smoking — specifically *caused* [the child's] cardiopulmonary arrest.

*Id.* at 536 (emphasis added). Furthermore, "the failure of the Hospital's expert witnesses to associate these specific factors to [the child's] cardiopulmonary arrest and subsequent death rendered these factors speculative." *Id.*

In the case at bar, after stipulating that SIDS was the only cause of death, the Commonwealth seeks to proffer an expert witness who will testify that Dylan's "risk of SIDS increased significantly" because the Defendant allowed her employees to engage in risky behavior. The Commonwealth can show only that these risk factors are correlated to an increased risk in SIDS, not that they prove causation, because testimony on SIDS risk factors is "speculative" and does not prove causation. Under the holding in *Fairfax Hospital*, the jury cannot find that any act of the Defendant or her employees was a proximate cause of Dylan's death. This is true even if the actions of the Defendant or her employees increased the risk factors associated with SIDS.

## B. *Felony Homicide*

In Virginia, a defendant can be convicted of felony homicide when she kills another, "accidentally, contrary to the intention of the parties, [and] while in the prosecution of some felonious act" not amounting to capital or first-degree murder. Va. Code Ann. § 18.2-33 (1999). However, "[t]he homicide must be 'within the *res gestae*' of the underlying felony *and* 'an emanation thereof'." *Talbert v. Commonwealth*, 17 Va. App. 239, 245 (1993)

(quoting *Haskell v. Commonwealth*, 218 Va. 1033, 1041 (1978)); *see also King v. Commonwealth*, 6 Va. App. 351, 355 (1988). Thus, the death must be "temporally related to commission of the felony," and the "felony or acts in furtherance thereof must contribute to cause" it. *King*, 6 Va. App. at 357. In fact, "[t]he mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine" because death "must be a consequence of the felony . . . and not merely coincidence." *Id.* at 356 (quoting *Commonwealth v. Redline*, 137 A.2d 472, 476 (Pa. 1958)) (internal quotations omitted). Specifically, the Commonwealth must satisfy a three-pronged test to show causation: first, "only acts causing death which are committed by those involved in the felony may be the basis for a conviction"; second, "the act causing death must result from some effort to further the felony before malice can be imputed to that act"; and third, "there must be some act attributable to the felon[] which causes death." *Barrett v. Commonwealth*, 32 Va. App. 693, 701 (2000) (quoting *King*, 6 Va. App. at 357).

As already discussed, the diagnosis of SIDS is a diagnosis of exclusion, and a finding that SIDS caused a death is, by definition, a finding that there is no identifiable cause of death, even if a defendant exposed a child to SIDS risk factors. In the case at bar, even assuming the truth of each of the Commonwealth's allegations and that the Commonwealth can prove beyond a reasonable doubt that the Defendant is guilty of felony child neglect under § 18.2-371.1, the Commonwealth cannot simultaneously prove both that "SIDS caused Dylan's death" and that "the Defendant's or her employees' acts or omissions caused Dylan's death" because the two are mutually exclusive. Therefore, because the Commonwealth agrees that SIDS is the sole cause of death, the Defendant's actions or omissions cannot be a cause of death.

The Court, then, concludes that the Commonwealth cannot satisfy any of the three prongs set forth in *King*. First, the Commonwealth cannot show that the Defendant's or her employees' acts or omissions during the felony child neglect *caused* death because SIDS was the cause of death. Second, the Commonwealth cannot show that the Defendant or her employees committed an act in furtherance of the felony child neglect that *caused* death. Third, and similarly, the Commonwealth cannot show that the Defendant or her employees committed some act that *caused* death.

The Commonwealth argues that Virginia precedent has established causality in felony homicide cases in circumstances that are just as extenuated as the ones in this case and that the Court should, therefore, find causation in the case at bar. *See Heacock v. Commonwealth*, 228 Va. 397 (1984) (finding that the defendant contributed to the victim's fatal overdose death by mixing and supplying cocaine that the victim used because the substance was known to be dangerous to life and health), *Carrowiano v. Commonwealth*, No. 1884-08-2, 2009 Va. App. LEXIS 548 (Va. App. Dec. 8,

2009) (holding that the defendant's supplying the victim with methadone was a proximate cause of the death), and *Bryant v. Commonwealth*, Record No. 2538-09-1, at *5 (Va. App. May 5, 2010) (finding the defendant was guilty of felony homicide when his child died from prolonged starvation while the defendant was on duty but knew about the problem). However, a quick review of these cases clearly shows that, unlike the case at bar, there was a cognizable and unnatural cause of death and that the defendants' actions were intimately connected to and served as a proximate cause of the deaths.

The Court's conclusion is consistent with other courts' holdings in similar cases involving SIDS. In *Claar v. Munk*, an infant died from SIDS, and the plaintiff's expert witness testified that the plaintiff's laying the infant "on a standard twin mattress to sleep rather than a crib mattress was the proximate cause of . . . death." *Claar v. Munk*, No. 14-04-46, 2005 Ohio App. LEXIS 4945, at *2 (Ohio App. Oct. 17, 2005). In affirming the trial court's decision to grant the defendant's motion for a directed verdict, the court commented that, because SIDS is a diagnosis of exclusion, "every time a cause of death is identified in a prior SIDS case, the cause of death is no longer SIDS." *Id.* at *7, n. 1. The court held that, while damages, duty, and breach could have been determined, the plaintiff could not prove a proximate cause, an essential element of her case:

> [A]lthough placing the child on the twin bed rather than in the pack and play was a risk factor, there was no way to determine if [the infant] would have died anyway. According to [one of the expert witnesses], SIDS is impossible to predict and has occurred in children with no risk factors. At the same time, children with multiple risk factors may not die.

*Id.* at *9–10. *Cf. Illinois v. Clay*, 843 N.E.2d 885, 893–94 (Ill. App. 2006) (upholding a defendant's murder conviction for drowning his child when expert witnesses had conflicting opinions regarding whether SIDS or drowning was the cause of death because "the evidence . . . was not so unreasonable or unsatisfactory that there remains a reasonable doubt as to [the defendant's] guilt"). In *State v. Aten*, the defendant was convicted of second-degree homicide for the death of an infant even though the medical examiner could not determine whether SIDS or suffocation caused the infant's acute respiratory failure and death. *State v. Aten*, 927 P.2d 210, 220 (Wash. 1996). The court affirmed the court of appeals' reversal of the defendant's conviction, reasoning in part that a "diagnosis of SIDS . . . as the cause of death in this case is inconsistent with a conclusion that the infant died as a result of a criminal act." *Id.* at 221. In the same way, the Court finds SIDS to be fatal to the Commonwealth's position in the case at bar.

## Conclusion

One of the concerns emphasized by the Commonwealth is the alleged substandard conditions at Little Eagles Day Care. Because of its affiliation with a church, the day care center is not subject to the regulations applicable to secular day care centers. The Commonwealth quite accurately argued that had Little Eagles Day Care been subject to the regulation and inspection required of secular day care centers, many of the SIDS risk factors would not have been present. While the Court is certainly sympathetic with the concerns expressed by the Commonwealth, the remedy for this situation lies in the sound discretion of the General Assembly, not with the judiciary.

The Court holds that there can be no proximate cause of death when SIDS is the sole cause of death because, by definition, no legal or medical cause of death can be ascertained. The Court, in following the Supreme Court of Virginia's decision in *Fairfax Hospital*, also holds that evidence of exposing an infant to SIDS risk factors cannot be used to prove proximate cause. Because there is no dispute that SIDS was the sole cause of Dylan's death, the Commonwealth, as a matter of law, cannot prove beyond a reasonable doubt that the Defendant's or her employees' alleged acts or omissions were a proximate cause of Dylan's death. Accordingly, the Court will dismiss the Defendant's felony homicide indictment.