COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Retired Judge Smith[*]
Argued at Salem, Virginia


KIMBERLY DAWN RATLIFFE

                                   MEMORANDUM OPINION[**] BY
v.   Record No. 0532-02-3     JUDGE RUDOLPH BUMGARDNER, III
                                        SEPTEMBER 23, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                  William N. Alexander, II, Judge

          Mark W. Claytor for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     The trial court convicted Kimberly Dawn Ratliffe during a

bench trial of felony child neglect in violation of Code

§ 18.2-371.1(B).  She contends the evidence was insufficient to

prove her conduct was so gross, wanton, and culpable it showed a

reckless disregard for human life.

     We review the evidence in the light most favorable to the

Commonwealth and grant all reasonable inferences fairly

deducible from it.  Archer v. Commonwealth, 26 Va. App. 1, 11,

_____

          [*] Retired Judge Charles H. Smith, Jr., took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400.

          [**] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

492 S.E.2d 826, 831 (1997). The defendant, her nine-month-old daughter, and the child's father went to visit a friend in Franklin County. After arriving, the defendant made a bed for the child in the bedroom's hot tub rather than in her portable crib because the room was small. The child could pull herself up but could not walk and could not climb out of the tub. The drain was inoperative.

After putting the child to bed in the tub about 10:30 p.m., the defendant heard her cry. She went into the bedroom and found that the child had turned on the water and was wet. The defendant turned off the water and put the child back in the tub without changing her. Around 11:00 p.m., the child cried again, and the defendant returned to the bedroom. She gave the child a bottle, and the child quieted down. The defendant remained in the bedroom and fell asleep on the bed. The defendant never heard the child cry again although the hot tub was only forty inches from her bed. A neighbor heard the child crying loudly at 11:30 p.m. while walking past in the hallway of the building. She still heard the crying ten or fifteen minutes later when she returned past the door. At approximately 1:00 a.m., the defendant awoke, found the tub overflowing, and the child drowned. The water had run for a long time and had overflowed into the apartment two levels below.

At the emergency room, attempts were made to revive the child, but her body temperature and oxygen levels indicated that

she had been in the water for "a fair amount of time" and without oxygen for "a long period of time." The defendant told the emergency room nurse that she should have known better. She told the nurse, "She had put the child in the tub before and the child had messed with the water."

The trial judge specifically found the child had been crying for a lengthy period of time but the defendant did not hear her cries. When the child had gotten wet, the defendant did nothing to take care of the child. She placed the child in the hot tub knowing that the water was dripping and that the child could turn on the water. The defendant placed the child in a position of extreme peril and left her there. As a result, the child died by drowning. The trial court concluded, by finding beyond a reasonable doubt, that the defendant willfully acted and omitted to act in a way that showed a gross, wanton, and culpable disregard for the life of the child.

Code § 18.2-371.1(B) requires proof that the defendant's "willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life." Willful "denotes '"an act which is intentional, or knowing, or voluntary, as distinguished from accidental."'" Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999) (quoting Snead v. Commonwealth, 11 Va. App. 643, 646, 400 S.E.2d 806, 807 (1991) (quoting United States v. Murdock, 290 U.S. 389, 394 (1933))). The act necessarily implies "knowledge

- 3 -

that particular conduct will likely result in injury or illegality."  Id.

In Ellis, this Court reversed a conviction where the defendant had left her children unattended in her apartment.  A fire started from the gas stove, which the defendant had left on after lighting a cigarette.  No evidence indicated the defendant intentionally left the gas jet burning.  The evidence was insufficient to show the defendant knew her children would likely be injured.

In Barrett v. Commonwealth, 32 Va. App. 693, 697, 530 S.E.2d 437, 439 (2000), this Court affirmed a conviction where the defendant left her children unattended.  The defendant knew the two-year-old child had hit, choked, and attempted to smother her younger ten-month-old child.  Barrett knew the older child could pull the younger child into the tub and could run the water.  Knowing of previous, potentially lethal conduct, Barrett left the children unattended and the older drowned the younger in the tub.  A different panel of this Court reviewed this set of facts a second time.  Barrett v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (August 26, 2003), affirmed "a finding that [Barrett] acted in a 'conscious disregard' of the likely present danger to the life and health of her children, particularly the ten-month-old infant . . . ."

The defendant's conduct in this case is similar to that of Barrett.  After the child had turned on the water, the defendant

- 4 -

knew of the lethal potential but willfully returned her daughter to that place of imminent danger.  Drowning was a tragic, but foreseeable, consequence of placing a nine month old in a tub from which she was too young to extricate herself from a danger she could create.  The defendant knew her particular conduct would likely result in serious harm.  She acted with conscious disregard of the present danger to the life of her child.  The evidence was sufficient to prove beyond a reasonable doubt that the defendant was guilty of felony child neglect.  Accordingly, we affirm the conviction.

Affirmed.

Benton, J., dissenting.

As we noted in Ellis v. Commonwealth, 29 Va. App. 548, 513 S.E.2d 453 (1999), "inattention and inadvertence have not been heretofore equated with actions taken willfully, thus, making them subject to criminal penalty." Id. at 556, 513 S.E.2d at 457. "'[W]hen used in a criminal statute[, willful] generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely.'" Lambert v. Commonwealth, 6 Va. App. 360, 363, 367 S.E.2d 745, 746 (1988). Thus, to prove the element of "willful," the evidence must establish more than bad judgment, a mistake, or an accident. See United States v. Murdock, 290 U.S. 389, 394 (1933). Indeed, we have noted that "willful maltreatment of a child requires 'something worse than good intentions coupled with bad judgment.'" Ellis, 29 Va. App. at 556, 513 S.E.2d at 457 (quoting Mullen v. United States, 263 F.2d 275, 276 (D.C. Cir. 1958).

The evidence proved that Ratliffe used bad judgment in not removing the nine-month-old child from the jacuzzi after the child, who was not yet walking, apparently pulled herself up in the jacuzzi and turned the faucet. When Ratliffe returned to the room to tend the crying child, she gave the child milk and stayed with the child to assure that the child slept. Ratliffe then slept. I would hold that this conduct is insufficient to prove Ratliffe acted willfully and certainly insufficient to

- 6 -

prove her conduct was so "gross, wanton and culpable as to show a reckless disregard for human life," as required by Code § 18.2-371.1(B)(1).

For these reasons, I would reverse the conviction.